[No. 23658. Department Two. July 16, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. LEE DOWNS
*et al., Appellants.*[1]

*Henry Clay Agnew,* for appellants.

*Robert M. Burgunder* and *William J. Wilkins,* for respondent.

HOLCOMB, J.—Appellants were convicted in the court below of the crime of burglary in the second degree, and from judgments and sentences upon such conviction have appealed to this court.

The evidence on behalf of the state shows that, some time after eleven o'clock on the night of April 10, 1931, the premises of the Franklin Dairy, in Seattle, were entered and burglarized. The door of the safe had been knocked off and a considerable amount of money, checks and other valuable papers taken therefrom. The burglary was first discovered by an employee of the company at about five-thirty o'clock the following morning, and within a very short time reported to the Seattle police department.

Meantime, about two o'clock on the morning of April 11, which was about three hours after the dairy prem-

[1]Reported in 13 P. (2d) 1.

ises were closed with the safe intact, two police officers in a prowler car discovered appellants parked in an automobile along a side road running off Columbian way, in the portion of the city known as Beacon Hill, and within two miles of the dairy. Appellants had a dim light burning in the car, checks and money were spread all over the back seat, and they were counting the money. Appellant Downs had a .38 caliber revolver, fully loaded and cocked, in a holster slung under his arm. When the officers surprised them, Downs made a movement with his right hand toward the gun. One loaded clip for the revolver was in his pocket. Phillips had $15.68, mostly in change, in his side pocket. Downs had $82.17, and about $101.95 was in a cigar box and scattered about the back seat of the car. Phillips first gave an assumed name, but later admitted his name when the same was found on cards in his pocket.

Appellants stated to the officers when they were arrested that they had found this property. Downs said they had been in Tacoma the night of April 10, and had not stopped there, but had driven back to Seattle, stopped in a restaurant on Pike street, and while in that restaurant heard some "yeggs" telling about a cache they had planted. He refused to state the name of the restaurant. He would make no statement to the officers as to where the gun had been obtained.

During the trial of the case, both appellants testified that they overheard a conversation while in the restaurant at Tacoma about the location of a cache where this loot was stored. Downs testified that one of the men was "Jimmy Mack something," and he had met him at a certain cafe in Seattle some time previously; that, after hearing that conversation, appellants drove back immediately to Seattle, delivered their passengers, drove then to the south end of the city on Beacon Hill,

and had just found the loot, together with the loaded revolver, when the officers arrested them.

Appellants offered to prove by detective Lieutenant Borneman, who had testified on behalf of the state and was recalled as a witness for the defense, that there was a man known as "Madison Jimmy," whose occupation was that of a safe burglar, who was in town April 10, and that they had a picture of him at police headquarters which, if produced, would be identified by Downs as the man whom he saw in the restaurant. An objection by the state to this offer of proof was sustained by the court.

Appellants assign as error that the court erred in excluding the offered testimony of the witness Borneman and of appellant Downs that the picture, if produced, was the picture of the man who was in the Tacoma restaurant.

Appellants, in support of their contention, quote 16 C. J. 559, to the specific point that (briefly)

"Accused may show that another committed the crime, and where the state relies on circumstantial evidence to connect accused with the crime, he may, by the same character of testimony, prove that others committed it. . . . that any evidence is admissible to show the fact that another person committed the offense; and in some jurisdictions it is held that accused may prove the confession of another who was in such a position that he could and might have committed the crime."

Cases cited as being to the same effect are: *McDonald v. State,* 165 Ala. 85, 51 South. 629; *McPherson v. State,* 79 Tex. Cr. App. 93, 182 S. W. 1114; *Satterwhite v. State,* 77 Tex. Cr. App. 130, 177 S. W. 959; *Ward v. State,* 71 Tex. Cr. App. 310, 158 S. W. 1126; *Gilder v. State,* 61 Tex. Cr. App. 16, 133 S. W. 883; *State v. Harris,* 153 Iowa 592, 133 N. W. 1078. *State v. Edelstein,* 146 Wash. 221, 262 Pac. 622, is also cited by

appellants as sustaining their contention. It was held in that case that circumstantial evidence may consist of matters which alone would be immaterial where, in connection with other evidence, they may be helpful in discovering the truth.

All the cases cited by appellants have been examined. Some of them, for instance the Texas cases, seem to have been more liberal in allowing the admission of testimony which, standing alone, would manifestly be irrelevant, but when connected with other circumstances tending to show the guilt or innocence of the accused, would not be considered strictly collateral facts tending to prove nothing.

The general rule was well stated in *Greenfield v. People,* 85 N. Y. 75, 39 Am. Rep. 636, where it was said:

"While evidence tending to show that another party might have committed the crime would be admissible, before such testimony can be received there must be such proof of connection with it, such a train of facts or circumstances as tend clearly to point out some one besides the prisoner as the guilty party. Remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose."

As stated in 16 C. J. 559, in part:

". . . where there is no other evidence tending to connect such outsider with the crime . . . his bad character, . . ., his means or opportunity to commit, or even his conviction of, the crime, is irrelevant to exculpate accused; . . ."

Before such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party. *State v. Caviness,* 40 Idaho 500, 235 Pac. 890.

The fact that the so-called "Madison Jimmy" was present in Seattle on the night of the burglary and may have had opportunity to commit it, does not amount to

even a justifiable suspicion that he did so. In the absence of other circumstances tending in some manner to connect him with the commission of the crime, we cannot see how the presence of ''Madison Jimmy'' in Seattle at the time of the commission of the crime, even if positively identified by some one who had seen him there that night, had any effect upon the question of the guilt or innocence of appellants. *State v. Myers,* 12 Wash. 77, 40 Pac. 626; *State v. McLain,* 43 Wash. 267, 86 Pac. 390. See, also, *Enlow v. State,* 154 Ind. 664, 57 N. E. 539; and *State v. Kelly,* 77 Conn. 266, 58 Atl. 705.

It is clear that the excluded evidence of officer Borneman and the offered evidence of appellant Downs would not create a reasonable inference as to the innocence of appellants. It was merely of the most remote kind of speculation.

The judgments are affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.