

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE  MAY 0 8 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 8, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 87253-8 |
| Respondent, | EN BANC |
| v. | |
| ANDRE LUIS FRANKLIN, | Filed __MAY 0 8 2014__ |
| Petitioner. | |

GORDON McCLOUD, J.—The trial court excluded defendant Andre Franklin's proffered evidence that someone else committed the cyberstalking-related crimes with which he was charged. Specifically, it excluded evidence that Franklin's live-in girl friend Rasheena Hibbler had sent threatening e-mails to his other girl friend Nanette Fuerte despite the fact that Hibbler had the motive (jealousy), the means (access to the computer and e-mail accounts at issue), and the prior history (of sending earlier threatening e-mails to Fuerte regarding her relationship with Franklin) to support Franklin's theory of the case.

The trial court reasoned that this was "other suspect" evidence, and that such evidence is inadmissible unless it overcomes a "high" bar. Partial Report of Proceedings (RP) (June 22, 2009) at 10. The trial court clearly meant a bar higher than the relevance, foundation, and similar prerequisites to admissibility established by Washington's Rules of Evidence (ER); the trial court meant that it could consider all the other evidence of Franklin's guilt and exclude the "other suspect" evidence because the other proof of the defendant's guilt was great.

We reverse. First, the United States Constitution bars the trial court from considering the strength or weakness of the State's case in deciding whether to exclude defense-proffered other suspect evidence. The United States Supreme Court expressly reiterated this rule not long ago in *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). Second, Washington law reinforces this constitutional mandate. We have never adopted a per se rule against admitting circumstantial evidence of another person's motive, ability, or opportunity. Instead, our cases hold that if there is an adequate nexus between the alleged other suspect and the crime, such evidence should be admitted. The trial court violated both of these rules: it considered the strength of the State's case against the defendant and it applied a per se standard to exclude the other suspect evidence. Thus, its exclusion

of the proffered other suspect evidence was error under both our case law and our constitution.

## FACTS

Franklin had a romantic relationship with two women. Fuerte and Franklin began an intermittent romantic relationship while working together during the fall of 2005; it lasted until late 2008. Meanwhile, Franklin lived with Hibbler and Hibbler disapproved of Franklin's relationship with Fuerte.

Things deteriorated between Franklin and Fuerte in October 2008, after Fuerte borrowed $3,000 from Franklin to cover an unexpected expense. The two agreed in writing that she would pay him back on November 26, 2008. On November 6, 2008, Franklin showed up at Fuerte's home uninvited. Fuerte and a male friend were watching a movie. Fuerte did not invite Franklin in but did talk with him outside for a few hours. At trial, she testified that Franklin seemed upset that she had another man at her house.

The next night, Fuerte began receiving numerous lewd calls and texts from numbers that she did not recognize. Fuerte eventually discovered that the callers were responding to a Craigslist ad urging readers to contact Fuerte for sexual favors. In total, she received between 75 and 100 calls or texts from the ad posting.

Then, on November 8, 2008, Franklin interrupted Fuerte's dinner at a restaurant, threatened to tell her employers "exactly what type of person" she was, and demanded the money she owed him. RP (June 29, 2009) at 37. Franklin left after Fuerte told him she would pay him back the following Monday.

But on Monday, Fuerte began receiving e-mails from a new personal e-mail account, time4gamez@yahoo.com, to set up a time for her to deliver the payment. The e-mail stated, "[I]f I was u[,] i would stop playing gamez." Ex. 40. Fuerte replied that she was not playing games and that she was trying to get the money. The response she received stated,

> [C]ommunication is key…u friday then u said monday @ noon. u asked me 2 b patient I no longer have any patients for u and Ur games. the way i c it is that u are useing my money 2 go out and have fun while i am working hard 2 save money…u have till 1pm then u know what will happen.

*Id.*

Soon after the above e-mail, Fuerte received another e-mail that contained a copy of a new Craigslist ad. That new ad listed Fuerte's name and work phone number and asked readers to tell Fuerte what they would like to do to her. Two sexually explicit photos of Fuerte were attached to the e-mail, one of which also featured Franklin.

Fuerte testified that she eventually cashed a $3,000 check and met Franklin at his home to deliver it. Fuerte testified that Franklin laughed at her when she gave him the money and that he stated, "[D]o you think this is the end of it? This is just the beginning." RP (June 29, 2009) at 51.

Later that day, Fuerte received an additional e-mail from the time4gamez account: "[S]o r u going to play my game or not?" Ex. 42. This was followed by another threatening e-mail. The next day, Fuerte received another e-mail containing the same proposed Craigslist ad stating that Fuerte was offering free sexual services.

Fuerte then received more threatening e-mails from the time4gamez account asking whether Fuerte would play the "game." *E.g.*, Exs. 48-51. One of the time4gamez e-mails stated, "[N]ow u may lose it all B-cuz u wanted 2 play games . . . . I told u a # of time I am not the 1 2 play with . . . but u still thought it was OK." Ex. 54. At one point Franklin called Fuerte and laughed while telling her that she should have gotten a receipt for the $3,000 payment because he could just pretend she had not paid. Fuerte was particularly upset because he had contacted her through her son's phone. The next morning, Fuerte reported the call to the police.

After several more rounds of e-mails and phone calls, during one of the calls, Fuerte asked Franklin to stop everything. He told her that he would not stop, that the first Craigslist post "was just the tip of the iceberg," and that she "should start

looking over [her] shoulder." RP (June 29, 2009) at 73-74. He also stated that he knew people who could "do dirt" for him. *Id.* at 74.

Shortly after ending that phone call, Fuerte began receiving sexually explicit responses to another Craigslist ad, which also contained the sexually explicit photos from the first posting. Fuerte eventually contacted Human Resources, because the e-mails were directed to her work e-mail address, and contacted the police. She obtained a temporary protection order, and Franklin was placed on administrative leave. In total, prior to Fuerte's reporting of the harassment, there were 13 Craigslist postings similar to the ones listed above.

On December 8, 2008, the State charged Franklin with one count of first degree perjury, one count of stalking, and one count of cyberstalking. The perjury charge was based on Franklin's testimony at a hearing for a permanent restraining order where he testified under oath that he did not post any ads or possess any explicit pictures of the victim. The stalking charge alleged that Franklin "repeatedly harass[ed]" Fuerte, Clerk's Papers (CP) at 2, and the jury instructions defined "to harass" as "to carry out a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses or is detrimental to such person," CP at 46. The cyberstalking charge alleged that Franklin, "with intent to harass . . .

Fuerte, . . . ma[de] an electronic communication to her . . . using . . . lewd, lascivious, indecent, or obscene words [or] images . . . ." CP at 2.

One of Franklin's primary defenses to the charges was that Hibbler, with whom he lived, had posted the Craigslist ads and sent the harassing e-mails. His basis for this other suspect defense was that Hibbler's personal laptop was the only computer in their home, and she had previously sent threatening messages to Fuerte via e-mail, text message, and phone, expressing displeasure about Fuerte's relationship with Franklin. Moreover, Hibbler had accessed Franklin's e-mail in the past.

The State, however, moved to exclude evidence that Hibbler had posted the Craigslist ads, arguing that there was not a sufficient nexus between her and the crime. The trial court granted the State's motion, explaining that "the other suspect bar, quite frankly, is high" and that it required more than showing mere motive and opportunity—it required specific facts showing that someone else committed the crime. RP (June 22, 2009) at 10-11. Moreover, the trial court stated, "I not only look at the foundation for other suspect evidence, but I also look at the evidence against the defendant." RP (June 29, 2009) at 13.

The jury convicted Franklin of all three crimes. CP at 124-26. On appeal, he argued that the trial court erred in excluding the other suspect evidence. Franklin

also argued that the court had erred by applying a Fifth Amendment[1] privilege to Hibbler's testimony in open court, by excluding Franklin's brother as a witness, by closing the courtroom to conduct an in camera hearing, and by excluding Franklin from the in camera hearing. The Court of Appeals affirmed. *State v. Franklin,* noted at 166 Wn. App. 1041, 2012 WL 745227, at *1. Franklin petitioned for review, and we granted it on all issues except for the closed courtroom issue. *State v. Franklin,* 174 Wn.2d 1017, 282 P.3d 96 (2012).

## ANALYSIS

The trial court in this case erred when it excluded Franklin's alternate suspect evidence.[2] The trial court's ruling conflicts with both federal and state law because it considered the strength of the State's case against the defendant and because it applied a per se standard to exclude the other suspect evidence.

    a. The Trial Court's Reasoning Conflicts with United States Supreme Court Precedent

---

[1] U.S. CONST. amend. V.

[2] We review a trial court's decision to exclude evidence for abuse of discretion. *State v. Perez-Valdez,* 172 Wn.2d 808, 814, 265 P.3d 853 (2011) (citing *State v. Bashaw,* 169 Wn.2d 133, 140, 234 P.3d 195 (2010)). An erroneous evidentiary ruling that violates the defendant's constitutional rights, however, is presumed prejudicial unless the State can show the error was harmless beyond a reasonable doubt. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (citing *State v. Stephens,* 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980)).

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). It is a right of constitutional magnitude. *See id.* For that reason, the United States Supreme Court has ruled that a trial court cannot exclude defense-proffered other suspect evidence because of the perceived strength of the State's case. *Holmes*, 547 U.S. at 327-29. In *Holmes*, the Court expressly distinguished cases where other suspect evidence was excluded on the basis of "well-established rules of evidence," from the case before it where "the critical inquiry concern[ed] the strength of the prosecution's case." *Id.* at 326, 329.

The *Holmes* Court explained that the exclusion of other suspect evidence is a "specific application" of the general evidence rule permitting a judge "to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 327, 326. But when a rule that is "intended to be of this type" instead strays into evaluating the strength of the State's case, then it "does not rationally serve the end that [it was] designed to promote, *i.e.*, to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues." *Id.* at 328, 330.

The trial court's reasoning in this case suffers from the same flaw as did the South Carolina rule rejected by *Holmes*. The trial court stated that in considering whether the defense had laid the foundation for other suspect evidence, "I not only look at the foundation for other suspect evidence, but I also look at the evidence against the defendant." RP (June 29, 2009) at 13. Under *Holmes*, this is unconstitutional. It impermissibly inquires into the strength of the prosecution's case, rather than focusing on the relevance and probative value of the other suspect evidence itself. *See Holmes*, 547 U.S. at 329.

b. The Trial Court's Reasoning Is Inconsistent with Prior Washington Case Law

The trial court also stated that other suspect evidence is inadmissible unless the proponent of the evidence shows that the alternate suspect had "more than mere opportunity" and "[m]ore than motive." RP (June 22, 2009) at 10. It ruled that "other suspect evidence . . . requires specific facts to show that another person actually committed the crime." *Id.* at 11. The State argues that the trial court's statements are justified by a line of cases stemming from our 1932 decision in *State v. Downs*, 168 Wash. 664, 13 P.2d 1 (1932). In that case, we held that other suspect evidence is admissible only if the defendant can show "a train of facts or circumstances as tend clearly to point out some one besides the [accused] as the guilty party." *Id.* at 667 (citing *State v. Caviness*, 40 Idaho 500, 235 P. 890, 892

(1925)). The defendants in *Downs* offered evidence that a potential suspect—the apparently infamous burglar "'Madison Jimmy'"—was in town at the time the charged burglary was committed. *Id.* at 666. There was no evidence actually connecting Madison Jimmy in any way to the particular burglary. Without the necessary "train of facts or circumstances" linking him to the crime, opportunity and character evidence alone were insufficient to infer any third-party guilt; it was "the most remote kind of speculation." *Id.* at 668. As such, it was properly excluded as irrelevant.

While *Downs* remains good law, we have since developed the "train of facts or circumstances" standard. One year after *Downs*, we held that "[m]ere evidence of motive in another party, or motive coupled with threats of such other person, is inadmissible, unless coupled with other evidence tending to connect such other person with the actual commission of the crime charged." *State v. Kwan*, 174 Wash. 528, 533, 25 P.2d 104 (1933) (citing *People v. Mendez*, 193 Cal. 39, 52, 223 P. 65 (1924), *overruled in part on other grounds by People v. McCaughan*, 49 Cal. 2d 409, 317 P.2d 974 (1957)). Further, we stated in *Kwan* that "[r]emote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose." *Id.* (citing *Downs*, 168 Wash. at 667). And we cited with approval a California case that explained:

> [This rule] rests upon the necessity that trials of cases must be both orderly and expeditious . . . To this end it is necessary that the scope of inquiry into collateral and unimportant issues must be strictly limited. It is quite apparent that if evidence of motive alone upon the part of other persons were admissible, that in a case involving the killing of a man who had led an active and aggressive life it might easily be possible for the defendants to produce evidence tending to show that hundreds of other persons had some motive or *animus* against the deceased . . . .

*Mendez*, 193 Cal. at 52. In effect, this limitation on collateral evidence was similar to the requirement that evidence must have sufficient "probative value" to be relevant and admissible under ER 403. Evidence establishing nothing more than suspicion that another person might have committed the crime was inadmissible because its probative value was greatly outweighed by its burden on the judicial system. Other suspect evidence that establishes only such suspicion is inadmissible.

In contrast, we held in *State v. Maupin* that eyewitness testimony that a kidnapping victim was seen after the kidnapping with a person other than the defendant was both relevant and sufficiently probative to pass the *Downs* test. 128 Wn.2d 918, 928, 913 P.2d 808 (1996). Such evidence links the other suspect to the specific crime charged, either as the true perpetrator or as an accomplice or associate of the defendant. Evidence of this sort differs from evidence of motive, ability, opportunity, or character in that the proffered evidence *alone* is sufficient under the circumstances to establish the necessary connection. However, neither *Maupin* nor

the earlier cases stand for the proposition that motive, ability, opportunity, and/or character evidence together can never establish such a connection. The *Downs* test in essence has not changed: some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the charged crime.

The trial court was thus incorrect to suggest that direct evidence rather than circumstantial evidence is required under our cases. The standard for relevance of other suspect evidence is whether there is evidence "'tending to connect'" someone other than the defendant with the crime. *Downs*, 168 Wash. at 667 (quoting 16 C.J. *Criminal Law* § 1085, at 560 (1918)), *quoted in Maupin*, 128 Wn.2d at 925. Further, other jurisdictions have pointed out that this inquiry, properly conducted, "focuse[s] upon whether the evidence offered tends to create a reasonable doubt as to the *defendant*'s guilt, not whether it establishes the guilt of the *third party* beyond a reasonable doubt." *Smithart v. State*, 988 P.2d 583, 588 & n.21 (Alaska 1999). The standard set forth by the trial court establishes a bar to admission of other suspect evidence significantly higher than the standard we have previously set forth and higher than the standard used in other jurisdictions.

Our more restrained interpretation of the *Downs* standard is also compelled by the United States Supreme Court's holding in *Holmes*, 547 U.S. 319. As discussed above, in that case, the Court examined the South Carolina Supreme

Court's transformation of the "train of facts or circumstances" test—i.e., the *Downs* test—into a balancing of the relative probative value of other suspect evidence against strong forensic evidence implicating the defendant. *Id.* at 328-29. The Supreme Court held that trial courts may exclude evidence on the ground that its probative value is outweighed by other considerations, but the probative value must be based on whether the evidence has a logical connection to the crime—not based on the strength of the State's evidence: "[j]ust because the prosecution's evidence, *if credited*, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case." *Id.* at 330. The South Carolina rule at issue in *Holmes*, like the rule applied by the trial court in this case, contradicts this constitutional standard and prior state case law.

   c. The Trial Court's Error in Excluding the Other Suspect Evidence in This
      Case Was Not Harmless

The trial court in this case excluded evidence showing that another person had both the motive and opportunity to commit the crime. More than that, the excluded evidence, taken together, amounts to a chain of circumstances that tends to create reasonable doubt as to Franklin's guilt.

The trial court's error directly affected Franklin's right, under both the state and federal constitutions, to present witnesses on his own behalf. *See Maupin*, 128

Wn.2d at 927. The error is therefore constitutional in nature. "[C]onstitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless. A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007) (citing *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980))).

The State concedes that if the trial court erred in excluding the other suspect evidence, the error is subject to constitutional harmless error analysis. Br. of Resp't at 28. However, the State claims any error in excluding Hibbler's testimony was harmless beyond a reasonable doubt. It asserts the error was harmless because "the evidence that Franklin had wanted to elicit from Hibbler was largely admitted through other witnesses." *Id.* at 35.

An error is harmless only if we cannot reasonably doubt that the jury would have arrived at the same verdict in its absence. *State v. Jones*, 168 Wn.2d 713, 724, 230 P.3d 576 (2010) (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)). Here, Franklin offered evidence that Hibbler had the motive, ability, and opportunity to commit the charged crime, and that she had personally threatened Fuerte regarding her relationship with Franklin via text and e-mail in the past.

Moreover, some of the circumstantial evidence against Franklin pointed equally to Hibbler. Though some of this evidence emerged at trial through other witnesses, some of it did not. And the trial court barred Franklin from arguing that the limited evidence on this point that was presented at trial implicated Hibbler. If the jury had been allowed to consider all of the other suspect evidence, it may have reached a different verdict.[3]

## CONCLUSION

The trial court erred in excluding other suspect evidence in this case, and the error was not harmless beyond a reasonable doubt. We therefore reverse Franklin's convictions and remand to the trial court.

---

[3] We note that the other suspect evidence was relevant not only to the cyberstalking charge against Franklin, but also to the stalking and perjury charges. The stalking jury instructions allowed the jury to consider the e-mails and Craigslist ads as proof of that crime, CP at 41-46; the perjury charge was based on Franklin's assertion at a pretrial hearing that he did not post any ads on Craigslist, CP at 1. Because we reverse all of Franklin's convictions and grant a new trial based on the other suspect issue, we do not reach his other claims.

_____
George McCloud, J.

WE CONCUR:

_____          _____
                                          Stephens, J.

_____          _____
                                          Wiggins, J.

_____          _____
Fairhurst, J.                             González, J.

No. 87253-8

OWENS, J. (dissenting) -- The majority reverses the Court of Appeals and overturns the trial court's discretionary ruling to exclude speculative evidence that another suspect cyberstalked the victim in this case. In doing so, the majority makes three critical errors. Frist, it alters our standard for admitting other-suspect evidence while claiming to leave it unchanged. Second, it fails to analyze the evidence using that—or any—standard and instead reverses the trial court for its questionable choice of words. And third, it misinterprets a United States Supreme Court case, expanding its limited holding well beyond its intended reach. The majority does all this to reverse Andre Luis Franklin's convictions based on a trial court ruling correctly referred to by the Court of Appeals as a "close call." *State v. Franklin*, noted at 166 Wn. App. 1041, 2012 WL 745227, at *6, *review granted*, 174 Wn.2d 1017, 282 P.3d

96 (2012). That call was well within the trial court's discretion to make, and I dissent because I cannot say that the trial court abused its discretion in doing so.

## ANALYSIS

A defendant's constitutional right to present a defense does not include the right to present irrelevant evidence. *State v. Maupin*, 128 Wn.2d 918, 924-25, 913 P.2d 808 (1996); ER 402. Evidence is relevant if it has "any tendency to make the existence of any [material] fact . . . more probable or less probable than it would be without the evidence." ER 401. Relevant "evidence may [nevertheless] be excluded if its probative value is substantially outweighed by" certain considerations such as prejudice or confusion, or if it will mislead the jury. ER 403.

In this case, Franklin sought to introduce evidence that another suspect committed the crimes. To establish other-suspect evidence as relevant and admissible, a defendant must connect the other suspect to the charged crime through "such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party." *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932). "Mere opportunity to commit the crime is not enough as such evidence is 'the most remote kind of speculation.'" *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004) (quoting *Downs*, 168 Wash. at 668). A defendant must show the other suspect intended to commit the charged crime or took an actual step to do the same. *State v. Kwan*, 174 Wash. 528, 532-33, 25 P.2d 104 (1933); *State v. Strizheus*, 163 Wn. App.

820, 830, 262 P.3d 100 (2011) (quoting *State v. Rehak*, 67 Wn. App. 157, 163, 834

P.2d 651 (1992)), *review denied*, 173 Wn.2d 1030, 274 P.3d 374 (2012). "'Remote

acts, disconnected and outside of the crime itself, cannot be separately proved for such

a purpose.'" *Downs*, 168 Wash. at 667 (quoting *Greenfield v. People*, 85 N.Y. 75, 89

(1881)). The defendant has the burden of showing that the other-suspect evidence is

admissible. *State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986).

The majority claims to leave the standard described above unchanged, majority

at 12-13, yet the majority alters it fundamentally. Citing a footnote from an Alaska

case, the majority holds that rather than showing a train of facts and circumstances

that connect the other suspect to the crime, a defendant needs to show only some

"chain of circumstances that tends to create reasonable doubt as to [the defendant's]

guilt." *Id.* at 13, 14. That has not been the law in Washington, and it opens the door

to irrelevant, speculative evidence in future cases. I would apply the *Downs* standard,

which has remained good law for 82 years in this state, and evaluate whether

Franklin's evidence sufficiently connects the supposed other suspect to the crime.

In addition to altering the standard for admitting other-suspect evidence, the

majority spends its time criticizing the unartful language of the trial judge rather than

analyzing the record to determine whether Franklin met his burden to show that the

evidence was admissible. In fact, the majority skips any analysis of the evidence

altogether and summarily concludes that "the excluded evidence, taken together,

3

amounts to a chain of circumstances that tends to create reasonable doubt as to Franklin's guilt." *Id.* at 14. In fact, a full analysis of the evidence that Franklin submitted shows that the trial court did not abuse its discretion in excluding it.

First, the fact that Franklin's girl friend Rasheena Hibbler had access to the computer is merely evidence of opportunity—the most remote kind of speculation. Second, Franklin in no way connected Hibbler to the time4gamez@yahoo.com account—the account actually used to perpetrate the crime. Franklin did not show that Hibbler even knew of the account, let alone that she created or accessed it. Third, as for prior threats, the evidence shows only that Hibbler sent threatening e-mails two to three years before the cyberstalking occurred. Though Hibbler contacted the victim five months before the cyberstalking began, she made no specific threats, and none of her e-mails suggest an intent to post salacious Craigslist ads or to send the harassing e-mails that supported the charges. These "'[r]emote acts, disconnected and outside of the crime itself, cannot be separately proved'" to show that Hibbler intended to cyberstalk the victim or took an actual step to do so. *Downs*, 168 Wash. at 667 (quoting *Greenfield*, 85 N.Y. at 89).

The evidence in this case is akin to that in *Strizheus*, as the Court of Appeals correctly concluded. In *Strizheus*, the defendant—accused of assaulting and attempting to murder his ex-wife and identified as the assailant by her—sought to introduce evidence of their son's recanted confession, motive, and bad character. 163

4

Wn. App. at 826. The trial court excluded the evidence, and the Court of Appeals affirmed its decision because no direct evidence contravened the State's version of events and no evidence showed an intent by the son to commit the crime. *Id.* at 832-33. The same conclusion applies here because Franklin's other-suspect evidence does not contravene the State's version of events and does not show intent or any actual step to commit the crime on Hibbler's part.

The majority reverses in large part due to the trial court's statement that it considered both the "foundation for other suspect evidence" as well as the "evidence against the defendant" when it ruled to exclude the other-suspect evidence. Partial Report of Proceedings (PRP) (June 29, 2009) at 13. The State's direct evidence included Franklin's separate confessions to his two superiors that he posted the ads and the victim's identification of him as the person she delivered $3,000 to on November 10, 2008. The majority contends that considering the State's evidence, in any way, runs afoul of the United States Supreme Court's holding in *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). *Holmes* supports no such contention.

In that case, the Supreme Court reviewed the following standard created and applied by the South Carolina Supreme Court: "'[W]here there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to

5

the appellant's own innocence.'" *Id.* at 324 (quoting *State v. Holmes*, 361 S.C. 333, 342-43, 605 S.E.2d 19 (2004)). The Court held that the standard was arbitrary, reasoning that "by evaluating the strength of *only one party's evidence*, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id.* at 331 (emphasis added).

The standard applied by the trial court was far different from the one the Supreme Court struck down in *Holmes*. Here, the trial court did not look to only one party's evidence, but rather determined—based on the totality of the evidence—that Franklin's evidence was too weak to meet the standard for admissibility. I find no abuse of discretion in that determination. Hibbler sent threatening e-mails years before the cyberstalking began. Those actions were too remote in time to connect to Franklin's crimes. Beyond that remote evidence, Franklin speculated only that Hibbler committed the crime because she had access to his computer, and he offered no other evidence or witness to corroborate her involvement in the crime. Here, the other-suspect evidence is far less than the evidence in *Holmes*, for example, where the defendant offered eight witnesses connecting the other suspect to the crime. *See State v. Holmes*, 361 S.C. at 339-41. After considering all the evidence on both sides of the issue, the trial court did not abuse its discretion in excluding the other-suspect evidence for lack of sufficient connection to the crime.

Finally, while the trial court did not abuse its discretion in excluding the other-suspect evidence, I note that Franklin was nevertheless able to argue that the State failed to meet its burden "by showing that there are other people who have . . . access to the IP Address." PRP (June 22, 2009) at 11. In fact, Franklin presented evidence to the jury that Hibbler had accessed his personal e-mail account and sent an e-mail to the victim from that account. Thus, Franklin cannot say that the trial court completely restrained his right to defend himself on this point. The majority admits that some of this evidence made it to the jury, yet—with little explanation—finds reversible error because "some of it did not." Majority at 15-16. At the very least, the fact that the jury heard this evidence weighs on the side of finding harmless error, to the extent one finds that any error occurred. But I do not find any reversible error in the trial court's decision to exclude the other-suspect evidence. I respectfully dissent.

Madsen, C.J.