**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46611-2-II |
| Respondent, | |
| v. | |
| JAMES STERLING TURNER, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. – James Sterling Turner appeals his conviction of robbery in the first degree, arguing that the trial court erred in excluding evidence that another suspect committed the crime. In a pro se statement of additional grounds (SAG), Turner raises several claims of ineffective assistance of counsel. Because the "other suspect" evidence did not clearly point to someone other than Turner as the guilty party, the trial court did not abuse its discretion in excluding that evidence. And, because Turner's claims of ineffective assistance rest on matters beyond the scope of the record as well as trial strategy, we reject these claims and affirm the conviction.

FACTS

On October 11, 2013, gas station convenience store cashier Latishia Larson prepared to close the store just before 11 P.M. A man came in, selected a beer, walked up to the checkout counter, and asked for two packs of cigarettes. He was wearing gloves, blue jeans, a black hoodie, and a baseball cap. When Larson reached for the cigarettes, the man pulled out a gun and told her to give him the money from her till. The man partly obscured the gun with his hand, but Larson thought it was a black, short 9mm automatic. The man left after Larson gave him $240.

Larson called 911 and reported the robbery. Within a few minutes, a deputy sheriff responded with his K-9 unit and attempted to track the suspect. The suspect's trail ended a few hundred yards up the road, presumably because he left the scene in a vehicle.

Deputy Jason Hedstrom took Larson's description of the suspect. She recalled the man as being five feet, one to two inches tall, and she described him as having distinctive teeth, with the upper row having a gap in the middle and the lower row being "jig-jagged around a little bit." III Report of Proceedings (RP) at 81.

After taking Larson's statement, Hedstrom reviewed the video surveillance of the store during the robbery. One video showed the robbery suspect go to the counter and pull out a weapon. Another showed him smoking a cigarette and throwing it down and stepping on it before entering the store. Hedstrom walked outside the store and found a crushed cigarette where the video showed the suspect discard a cigarette. The crushed cigarette was white with a picture of a camel. Hedstrom also noticed a tan cigarette on the sidewalk nearby. These were the only cigarettes the deputy saw, and he sent them to the state crime lab for DNA testing.

Hedstrom then put together a photo montage to show to Larson. Based on information that Antonio Diaz was in the vicinity before the robbery, and a vehicle associated with him was in the vicinity afterward, Hedstrom included Diaz's photograph in the montage. Larson said that the robber looked like Diaz but was not him.

Detective Tim Keeler later showed Larson additional photographs of Diaz's face and teeth. She said that his teeth did not look like the robber's teeth, and she recognized Diaz as a regular customer at the store. Larson said that Diaz did not commit the robbery.

In the meantime, the state crime lab uploaded the DNA extracted from the white cigarette into the state database. The lab uploaded only the DNA from the white cigarette because it was

flattened and the other cigarette was not. The database revealed that the DNA from the white cigarette matched Turner's DNA. During an interview with Turner, Keeler obtained a saliva sample for a follow-up comparison of his DNA with the DNA on the discarded cigarette.

Keeler then reviewed local police reports concerning Turner and discovered that in November, law enforcement had located his backpack during a separate investigation. The backpack appeared to contain a firearm, but further investigation showed that the firearm was a pellet gun replica of a semi-automatic pistol. Turner admitted that he owned both the backpack and the gun.

Detective Keeler took photographs of Turner's teeth and face and showed them to Larson. She agreed that his teeth looked like the robber's teeth except for his missing lower tooth. Keeler reviewed the cigarette and video evidence and confirmed that the white flattened Camel Crush brand cigarette was the one that the robbery suspect discarded.

The State charged Turner with robbery in the first degree. Before trial, the State moved to prevent the defense from introducing evidence that Diaz could have committed the robbery. The defense argued that it was entitled to introduce evidence concerning Diaz because he fit the suspect's physical description better than Turner and because a vehicle associated with Diaz was found in the vicinity of the robbery. The State responded that Diaz did not come up on the DNA "hit" and that the sole witness to the robbery had ruled him out as a suspect. I RP at 10. The trial court excluded the "other suspect" evidence after concluding that it did not clearly point to Diaz as the guilty party. The trial court added, however, that testimony related to Diaz might be admissible in exploring witness credibility.

At Turner's trial, Larson and the law enforcement officers testified to the above facts. In addition, the trial court read this stipulated fact to the jury: "That Defendant, James Sterling

Turner, lost his lower, front tooth after October 11, 2013." Clerk's Papers at 61; III RP at 242. A forensic scientist from the state crime laboratory subsequently testified that the probability of someone other than Turner having his DNA on the white cigarette was one in 41 quadrillion.

Turner took the stand in his own defense. He testified that he is five feet, eight inches tall and that he smokes Camel Crush cigarettes. He explained that the user "squish[es]" the cigarette's filter to release menthol. IV RP at 300. On cross-examination, he acknowledged that the white cigarette was his cigarette.

The jury found Turner guilty as charged, and the trial court imposed a mid-range sentence of 66 months. Turner now appeals his conviction.

## ANALYSIS

I.    EXCLUSION OF "OTHER SUSPECT" EVIDENCE

Turner argues that the trial court violated his right to a fair trial by excluding evidence showing that another suspect committed the robbery. We disagree.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Franklin*, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014). Alleging that a ruling violated the defendant's right to a fair trial does not change the standard of review, but an erroneous evidentiary ruling that violates the defendant's constitutional rights is presumed prejudicial unless the State can show the error was harmless beyond a reasonable doubt. *Franklin*, 180 Wn.2d at 377 n.2; *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). Both the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee the criminal defendant's right to present a defense. *State v. Starbuck*, __Wn. App.__, 355 P.3d 1167, 1172, *petition for review filed*, 92363-9 (Wash. Oct. 15, 2015). A criminal defendant does not

have a constitutional right to present irrelevant or inadmissible evidence. *Starbuck*, 355 P.3d at 1172.

The standard for the relevance of other suspect evidence is whether it tends to connect someone other than the defendant with the crime. *Franklin*, 180 Wn.2d at 381; *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932). Before the trial court admits "other suspect" evidence, the defendant must present a combination of facts or circumstances pointing to a nonspeculative link between the other suspect and the crime. *Franklin*, 180 Wn.2d at 381. The inquiry focuses on whether the evidence tends to create a reasonable doubt as to the defendant's guilt, and not on whether it establishes the third party's guilt beyond a reasonable doubt. *Franklin*, 180 Wn.2d at 381.

The defendant bears the burden of establishing the relevance and materiality of "other suspect" evidence. *Starbuck*, 355 P.3d at 1173. In establishing a foundation for admission, the defendant must show a clear nexus between the other person and the crime. *Starbuck*, 355 P.3d at 1173. The proposed evidence also must show that the third party took a step indicating an intent to act on the motive or opportunity to commit the crime. *Starbuck*, 355 P.3d at 1173. A showing that it was possible for the third party to commit the crime is insufficient. *State v. Rehak*, 67 Wn. App. 157, 163, 834 P.2d 651 (1992).

Turner contends that the "other suspect" evidence concerning Diaz created a reasonable doubt as to his own guilt. He points to evidence showing that Diaz and a car linked to Diaz were seen in the vicinity of the convenience store near the time of the robbery, that Larson said Diaz looked like the robber, and that Diaz fit Larson's description of the robber better than Turner.

The State responds that the location of Diaz and his vehicle showed only his opportunity to commit the robbery. The State also points out that Larson expressly rejected Diaz as a suspect

5

and instead recognized him as a regular customer at the store. In addition, there was no evidence connecting Diaz to the gun that the robber displayed or to any similar robberies in the area.

We agree with the State that the "other suspect" evidence that Turner offered was insufficient to provide a nonspeculative link between a third party and the robbery. Viewed as a whole, this evidence did not create a reasonable doubt as to Turner's guilt. We see no abuse of discretion in the trial court's exclusion of the "other suspect" evidence in this case.

II.     SAG ISSUES

Turner raises several claims of ineffective assistance of counsel in his SAG. To prove ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). We strongly presume that counsel's performance was adequate. *McNeal*, 145 Wn.2d at 362. If counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel. *McNeal*, 145 Wn.2d at 362.

Turner first complains that his initial attorney, who apparently withdrew before trial, told him that he had to go through with the "felony bindover process" and that the prosecutor would dismiss the case after reviewing the evidence. SAG at 1. There is nothing in the record to support these allegations, so we cannot address them here. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Turner makes several additional arguments concerning the attorney who represented him at trial. He complains that she did not want to use his alibi witnesses and that, despite her assurances, neither his former attorney nor the defense investigator testified.

The record does not refer to any potential testimony from Turner's first attorney, but it does show that his trial attorney planned to have the defense investigator testify. After the State challenged that testimony and obtained a voir dire hearing, the defense withdrew the investigator as a witness. The decision by Turner's attorney as to what witnesses to call on Turner's behalf was a matter of trial strategy that does not support a claim of ineffective assistance of counsel. *See State v. Jones*, 33 Wn. App. 865, 872, 658 P.2d 1262 (1983) (decision in that case not to examine or call witnesses is tactical).

Turner also complains that his attorney failed to ask important questions and offer an alternative explanation for the location of his cigarette and the conduct shown on the video. Here again, decisions as to what questions to ask and what line of defense to pursue were matters of trial strategy that do not support a claim of ineffective assistance of counsel.

Turner also complains that his attorney never moved to suppress the contents of his backpack. Officers searched the backpack pursuant to a warrant issued in a separate investigation. Before Turner's robbery trial began, defense counsel moved to exclude any evidence regarding the investigation that led to the pellet gun's discovery. The trial court ruled that testimony about the gun and Turner's acknowledgment thereof was admissible. There was no basis for defense counsel to move to suppress the fruits of a separate investigation, and we see no deficiency in counsel's attempt to exclude this evidence pursuant to a motion in limine.

Finally, Turner complains that his attorney did not attempt to show the jury who he is as a human being. Such evidence was not relevant to the charge and could have prompted cross-examination into Turner's criminal history and prior bad acts. *See* ER 405(a) (allowing cross-examination on specific instances of defendant's conduct to rebut reputation testimony); *State v.*

*Fisher*, 130 Wn. App. 1, 17, 108 P.3d 1262 (2005) (testimony supportive of good character opens door to rebuttal evidence of defendant's bad character).

We reject Turner's claims of ineffective assistance of counsel and affirm his conviction of robbery in the first degree.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.