# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49171-1-II |
| Respondent, | |
| v. | |
| GREGORIO I. LAYNA, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Gregorio I. Layna appeals his convictions for theft of a motor vehicle, possession of a stolen vehicle, and trafficking in stolen property in the second degree.  Layna argues that (1) the State did not present sufficient evidence that he trafficked in stolen property in the second degree and did not present sufficient evidence of theft of a motor vehicle, (2) the trial court erred in admitting the computer aided dispatch (CAD) call logs, and (3) the trial court erred in imposing discretionary legal financial obligations (LFOs) without conducting an adequate individualized inquiry into Layna's ability to pay.

We affirm in part and reverse in part.  We affirm the convictions for possession of a stolen vehicle and trafficking in stolen property in the second degree.  However, we reverse the theft of a motor vehicle conviction with prejudice, reverse the imposition of the discretionary LFOs, and remand for the trial court to conduct the proper inquiry before imposing discretionary LFOs and for further proceedings consistent with this opinion.

FACTS

I. BACKGROUND

On February 24, 2016, Penny Oberst called the police to report that her barn was burglarized and her motor home, which was parked in the barn, was stolen. Several other items were also stolen. Oberst did not know the exact date that the motor home or items were stolen because she does not live on the property and had not been in the barn for at least three to four weeks.

Three days earlier on February 21, Tina Anderson was horseback riding on a dirt, power line road when she came upon a motor home stopped in the middle of the road. She yelled to see if someone was inside the motor home and Layna, whom she knew, opened the door and stuck his head out. Anderson asked what he was doing, and Layna responded that he was just hanging out and that the motor home's battery was dead. Anderson continued riding down the road and then turned around to see the motor home coasting, without using its engine, down the road towards her.

On February 26, Liz Allen, who had sold the motor home to Oberst and knew it was missing, saw the motor home parked next to a house with a tarp over it and called the police. The license plate was covered, but she recognized it as the motor home that she had sold to Oberst.

Skamania County Sheriff's Deputy Steve Rasmussen responded to Allen's call and arrived at the scene where the stolen motor home was parked. Deputy Rasmussen noticed that the front of the motor home was tarped and he spoke to Michelle Williams, a resident of the house where

the stolen motor home was parked.[1] Deputy Rasmussen then had the motor home impounded, obtained a search warrant, and searched it. The inside of the motor home had been "cleaned out" and Deputy Rasmussen found evidence that the vehicle had been hotwired and the battery was dead. Verbatim Report of Proceedings (VRP) at 82.

Layna was later arrested. None of the items stolen from Oberst's barn were found in the motor home, on Layna, or at the residence where he was staying.

## II. PROCEDURE

The State charged Layna with burglary in the second degree, theft of a motor vehicle, possession of a stolen vehicle (occurring between February 21, 2016 and February 26, 2016), and trafficking in stolen property in the first and second degree (occurring between February 21, 2016 and February 26, 2016).

## A. TRIAL

Deputy Rasmussen, Oberst, Anderson, Allen, and Williams testified to the above facts. Deputy Rasmussen testified, but gave conflicting testimony regarding dates. He testified that the stolen motor home was discovered on February 26 at Williams's residence, but that he had the motor home impounded on February 25, based on the signed and dated tow receipt. He also said that the tow truck driver signed and dated the receipt February 28 as the tow date. He then testified that the search warrant to search the stolen motor home was issued on March 22, after Layna was arrested, but suggested that "[p]erhaps" the March 22 date was a typo. VRP at 89.

---

[1] Williams was a live-in caretaker for the property owner. The property owner was not questioned by Deputy Rasmussen and did not testify at trial.

3

Oberst testified that she did not know Layna and did not give him permission to take the motor home. Anderson testified that the vehicle she observed on the dirt road was the stolen motor home, but testified that the date that she saw the vehicle was either February 21, or 28. Williams testified that the motor home arrived on the property on February 24 or 25. She did not see anyone drive the motor home onto the property, but she saw a man she did not know putting a log under the wheel. She also saw Layna, whom she knew leaning up against a car nearby, and talking to the occupants inside the car. Williams stated she was "under the impression" that Layna wanted to sell the motor home. VRP at 151.

Prior to moving to admit two CAD call logs from the sheriff's office, the State questioned Anderson about the CAD call logs. Anderson stated that she actually worked for the sheriff's office as an administrative deputy and that she was familiar with the CAD call log system. She described the call logs as "deputy report[s]," and "a report that when a deputy does a report . . . in the [CAD] system this is how it comes out when you print it." VRP at 126-27.

The State then called Deputy Rasmussen to testify about how the CAD call logs were created. Deputy Rasmussen testified that the CAD call logs were generated when a dispatch operator receives a 911 call. Layna objected to this testimony on the basis of hearsay and cumulative evidence but the court overruled his objections. The State then moved to admit exhibit 19, the CAD call log documenting Oberst's February 24 call to the police, reporting the burglary of her barn. Layna objected that the CAD call log was cumulative and was an attempt to bolster

Oberst's prior testimony. The trial court overruled the objection and admitted exhibit 19 into evidence.[2]

The State then questioned Deputy Rasmussen about exhibit 20, the CAD call log documenting Allen's call on February 26, reporting that she saw the stolen vehicle parked at a residence. The State then moved to admit exhibit 20. Layna again objected, but the trial court overruled his objection and admitted exhibit 20 into evidence.[3] That exhibit stated, in relevant part, that the dispatch operator received a 911 call from Allen on February 26 and the operator documented the reported offenses of theft of a motor vehicle and theft of property from the vehicle.

The jury acquitted Layna of burglary in the second degree and trafficking in stolen property in the first degree; but found him guilty of theft of a motor vehicle, trafficking in stolen property in the second degree, and possession of a stolen motor vehicle.

B. SENTENCING

During sentencing, defense counsel informed the court that Layna was unemployed due to his incarceration. The court asked Layna about his employment after release:

> Judge: How will you be employed once you get out?
> Layna: I'm a mechanic.
> Judge: Okay.
> Layna: I have — I have a number of shops I can work at.
> Judge: Okay.

---

[2] Dispatch operator J. Lepoidevin, who did not testify, took the call from Oberst on February 24 as noted in exhibit 19.

[3] Dispatch operator N. Doherty, who did not testify, took the call from Allen on February 26 as noted in exhibit 20.

VRP at 217. The court was aware that other charges were pending against Layna. The trial court did not inquire into Layna's debts before imposing $1,000 in discretionary LFOs for attorney fees. But the court delayed Layna's payments for two years on the LFOs and ordered monthly payments of $50. Layna appeals his convictions and the imposition of discretionary LFOs.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Layna argues that the State failed to present sufficient evidence to support the convictions for theft of the motor vehicle and trafficking in stolen property in the second degree. We hold that the State failed to present sufficient evidence to sustain the conviction for theft of a motor vehicle; however, the State presented sufficient evidence to sustain the conviction for trafficking in stolen property in the second degree.[4]

We review sufficiency of the evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences reasonably drawn therefrom. *Salinas*, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague–Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007). We review a

---

[4] Because we reverse the theft conviction, we do not reach Layna's other arguments related to jury instructions, ineffective assistance of counsel (which relates solely to the theft instruction), double jeopardy, merger, or prosecutorial misconduct.

challenge to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

A. THEFT OF A MOTOR VEHICLE

Layna argues that the State failed to prove beyond a reasonable doubt that he committed theft of a motor vehicle. Layna argues that the State only provided evidence that he was in possession of the stolen motor home, but did not produce evidence that Layna actually stole the motor home. We agree with Layna that the State failed to prove that he wrongfully obtained or exerted unauthorized control over a motor vehicle.

In order to prove that Layna committed theft of a motor vehicle, the State had to prove that he "wrongfully obtain[ed] or exert[ed] unauthorized control over the [motor vehicle] of another or the value thereof, with the intent to deprive him or her of such property." RCW 9A.56.020(1)(a), .065(1). The jury was presented testimony from which it could conclude that Layna was in possession of the motor home. Witnesses testified that they saw Layna with the motor home in various locations at various times, and that the motor home was hotwired.

The State contends that this evidence is sufficient for a rational trier of fact to find that Layna committed the theft. However, the evidence and testimony did not place Layna at or near Oberst's barn or establish that he took the motor home from the barn. The State offered no evidence as to how Layna came into possession of the motor home. Further, it was not clear from the evidence when exactly the motor home was actually stolen from Oberst's barn. Thus, there was not sufficient evidence to show that Layna "wrongfully obtained or exerted unauthorized control" over the stolen motor home with the intent to deprive Oberst of the motor home. RCW 9A.56.020(1)(a).

Viewing the evidence and all reasonable inferences in the light most favorable to the State, no rational trier of fact could have found the elements of theft of a motor vehicle beyond a reasonable doubt. Thus, we hold that there was insufficient evidence to support the conviction for theft of a motor vehicle, and we reverse.

B. TRAFFICKING OF STOLEN PROPERTY IN THE SECOND DEGREE

Layna next argues that the State failed to present sufficient evidence that Layna had the requisite intent to sell the stolen motor home; therefore, the State failed to prove that Layna was trafficking in stolen property in the second degree. We disagree.

To convict Layna of trafficking in stolen property in the second degree, the State had to prove beyond a reasonable doubt that Layna recklessly trafficked in stolen property. RCW 9A.82.055(1). "'Traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19).

Here, the jury heard that Williams believed that Layna wanted to sell the motor home and she contacted him about purchasing it. Further, testimony indicated Layna was seen with the motor home at various locations, the motor home was covered by a tarp, and that when the police discovered the motor home, it had been hotwired and its interior was gutted. Trafficking does not require an intent to sell, but encompasses all statutorily enumerated actions described above, including intent to dispose of the property to another person. RCW 9A.82.010(19). A rational trier of fact could reasonably infer from the evidence presented that Layna's ultimate purpose was

8

to sell or dispose of Oberst's property, in any of the statutorily enumerated ways, based upon his moving of the motor home and his attempt to hide the motor home under a tarp.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, the evidence presented at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that Layna trafficked in stolen property in the second degree. Thus, we affirm the conviction.

## II. ADMISSION OF CAD CALL LOGS.

Layna argues that the admission of the CAD call logs violated his right to confront witnesses against him. We agree, but find that the error was harmless.

The confrontation clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Similarly, article I, section 22 of our state constitution guarantees the right of a defendant to "meet the witnesses against him face to face." WASH. CONST. art. 1, § 22. The confrontation clause provides that the State can present testimonial statements of an absent witness only if the absent witness is unavailable and the defendant has had a prior opportunity for cross-examination. *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). The State has the burden on appeal of establishing that the statements are nontestimonial and admissible. *Koslowski,* 166 Wn.2d at 417 n.3. We review alleged violations of the confrontation clause de novo. *Alvarez–Abrego,* 154 Wn. App. 351, 361, 225 P.3d 396 (2010).

Here, the CAD call logs were testimonial in nature. *State v. Powers*, 124 Wn. App. 92, 98, 99 P.3d 1262 (2004). Oberst and Allen made the 911 calls to the dispatch operators to report a crime or information about a crime. Layna did not have the opportunity to cross-examine either dispatch operator who created the CAD call logs because neither dispatch operator testified. Thus, because the CAD call logs were testimonial and Layna did not have the opportunity to cross-examine either dispatch operator, his right to confront witnesses was violated. Thus, the trial court abused its discretion by admitting the CAD call logs.

## HARMLESS ERROR

Because the admission of the CAD call logs violated Layna's constitutional right to confront witnesses against him, we must analyze whether this constitutional error was harmless. "'[C]onstitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless.'" *State v. Franklin*, 180 Wn.2d 371, 382, 325 P.3d 159 (2014) (quoting *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007)). A constitutional error is harmless if the State proves beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the constitutional error. *Franklin*, 180 Wn.2d 3 at 382. If the untainted trial evidence is "so overwhelming that it necessarily leads to a finding of the defendant's guilt, the error is harmless." *Koslowski*, 166 Wn.2d at 431.

Here, aside from the erroneous admission of the CAD call logs, the State presented overwhelming untainted evidence of Layna's guilt. The State charged Layna with trafficking in stolen property in the second degree occurring between February 21 and February 26. Deputy

10

Rasmussen's testimony confirmed that the motor home was towed by a tow truck between these dates. The testimony of Anderson, Williams, and Oberst also confirmed that the motor home was taken between these dates. Further, multiple witnesses testified that they saw Layna with the motor home in various locations and that the motor home was hotwired and gutted.

Therefore, even without the erroneous admission of the CAD call logs, the other evidence at trial was so overwhelming that it necessarily leads to a finding of the defendant's guilt. Thus, although the trial court erred in admitting the CAD call logs, we hold that the error was harmless beyond a reasonable doubt.[5]

### III. LFOs

Lastly, Layna argues that the sentencing court imposed $1,000 in discretionary LFOs without conducting a sufficient individualized inquiry into Layna's current and future ability to pay as required under *Blazina*.[6] We agree.

We review a court's decision to impose discretionary LFOs for an abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). A decision is an abuse of discretion when it is exercised on untenable grounds or for untenable reasons. *Clark*, 191 Wn. App. at 372.

---

[5] Layna argues that the CAD call logs were inadmissible hearsay and cumulative. We do not address these arguments because we hold that although the admission of the CAD call logs violated Layna's constitutional right to confront witnesses against him, the error was harmless beyond a reasonable doubt. Therefore, any evidentiary error necessarily is harmless.

[6] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

Before imposing discretionary LFOs, the trial court must make an individualized inquiry into the defendant's present and future ability to pay. RCW 10.01.160(3); *Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015). "In determining the amount and the method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of cost will impose." RCW 10.01.160(3). The sentencing court must consider factors such as whether the defendant meets the GR 34 standard for indigency, incarceration, and the defendant's other debts, including restitution. *Blazina*, 182 Wn.2d at 838-39.

Here, the court was advised that Layna was unemployed due to his incarceration. The court asked Layna about his employment opportunities after his release. Layna stated that he was a mechanic and there were a number of mechanic shops that may employ him. The court was also aware that Layna had other charges pending. The court did not inquire into Layna's debts or indigency status, although it delayed Layna's payments on his LFOs for two years and ordered monthly payments of $50.

On this record, we determine that the trial court did not consider all relevant factors to inquire into Layna's current and future ability to pay. Thus, we reverse the discretionary LFOs and remand to the trial court to conduct the individualized inquiry as required under *Blazina*.

CONCLUSION

We affirm in part and reverse in part. We affirm the convictions for possession of a stolen vehicle and trafficking in stolen property in the second degree. However, we reverse the theft of a motor vehicle conviction with prejudice, reverse the imposition of the discretionary LFOs, and

No. 49171-1-II

remand for the trial court to conduct the proper inquiry before imposing discretionary LFOs and for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.