# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48289-4-II |
| Respondent, | |
| v. | |
| EARL ALVIN POLLEY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Earl Alvin Polley was convicted of 10 counts of second degree identity theft, one count of forgery, and one count of third degree driving with a suspended license. On appeal, Polley argues that (1) the trial court abused its discretion in admitting text messages without proper foundation and in not admitting other suspect evidence; (2) the State presented insufficient evidence to convict Polley on all of the identity theft and forgery charges; (3) the trial court abused its discretion in failing to investigate alleged juror misconduct; and (4) he received ineffective assistance of counsel when his counsel failed to move for mistrial or to voir dire when the potential juror misconduct was alleged.

We hold that (1) the trial court did not abuse its discretion in making the challenged evidentiary rulings; (2) the evidence presented was sufficient to convict Polley on all of the identity theft and forgery counts; (3) the trial court did not abuse its discretion in failing to inquire into the alleged juror misconduct; and (4) Polley fails to allege or argue that he was prejudiced by his attorney's claimed ineffectiveness. Accordingly, we affirm.

No. 48289-4-II

FACTS

A.    THE INCIDENT

On March 18, 2015, Polley's aunt, Doreen Silvernail, found an unfamiliar backpack in her garage. Polley's father, Earl Thomas, lived in Silvernail's garage and, despite Silvernail's orders to Thomas that Polley was not allowed on the property, Silvernail caught Thomas letting Polley into the backyard by the garage about a week before the backpack was discovered. Silvernail assumed the backpack belonged to one of her several grandchildren who lived in the area, so she brought it inside her house. Silvernail opened the backpack and discovered checks, mail, W-2 forms, driver's licenses, and Social Security cards. At this point, Silvernail suspected the backpack belonged to Polley and asked Thomas for Polley's phone number.

Silvernail called the number and got an automated voicemail. A short time later, Silvernail received a text message from the number asking, "Who's this," to which Silvernail responded,

> Your aunt. I found the backpack and opened it as my grandson is always leaving things here. I am not happy with what I found. You need to . . . get your things out now. If you don't get your things tonight, I will turn . . . them over to the sheriff.

3 Verbatim Report of Proceedings (VRP) at 146 (internal quotations omitted). The response was, "Yep i will n their [sic] is no way u could have found it was put away n if i had a ride i would have already been there to get the back pack [sic]." Clerk's Papers (CP) at 50; *see* 3 VRP at 147. Silvernail reported the incident to law enforcement later that day, and Pierce County Sheriff's Deputy Alexa Moss responded.

Deputy Moss took the backpack and its contents into evidence. In the backpack, law enforcement found financial documents, personal information, mail, and checks belonging to Robert Hoover, Steven McClendon, Jason Lisonbee, Flor Rivera, Peter Dorros, Joesph Baley,

Keith Jester, Dina Franz, Myong Chin, Judson Webb, Michael Lawrence, Aaron Bedker, Willie Horace, Debbie Anderson, Scott Jester, Ronald Chrum, David Estes, Brandon Cohen, Christopher Lennox, and Britney Rader.

On March 27, Polley was stopped by police for driving a vehicle registered to an individual with outstanding warrants. Polley was driving with a suspended driver's license. Polley was arrested and read his *Miranda*[1] rights. Polley acknowledged that he understood his rights and wished to speak with the arresting officer. Polley asked the arresting officer if he was under arrest for driving with a suspended license. The arresting officer told Polley that he was under arrest "for items that he left at a relative's house," not mentioning that the item was a backpack or that it was left at Silvernail's home. 4 VRP at 360. Polley replied, "That wasn't [his] backpack." 4 VRP at 362. When the officer asked Polley what backpack Polley was talking about, Polley said, "The one at my aunt's house." 4 VRP at 362 (internal quotations omitted).

B.      THE CHARGES

Polley was charged with 10 counts of second degree identity theft (counts I, III-X, and XII), one count of forgery (count II), and one count of third degree driving with a suspended license (count XI). Counts I and II were for the articles recovered from the backpack that related to Debbie Anderson. These articles included mail addressed to Anderson, checks associated with her Sears MasterCard, and two checks made payable to Polley "for work." 3 VRP at 168. Anderson testified that she had never written a check to Polley, Polley had never done any work for her, she did not

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

know Polley, had not given Polley permission to possess her mail or use her name, and the signature on the checks purporting to be hers was not.

Count III was for articles recovered from the backpack that related to Aaron Bedker. These articles included mail addressed to Bedker, Bedker's driver's license attached to a letter from the Department of Licensing, and a check to be drawn from "Aaron Bedker Trucking, Inc." to "Michael Lawrence." 3 VRP at 206. The letter from the Department of Licensing had what appeared to be a credit card number and another number written on it. Bedker testified that he did not own the trucking company, did not know Polley, and had not given Polley permission to use his name or possess the articles recovered.

Count IV was for articles recovered from the backpack that related to Willie Horace. These articles included checks made out to Polley for "work," and to "Michael Lawrence." 3 VRP at 190-92. Horace died over three years before the checks purporting to be from him were dated.

Count V was for articles recovered from the backpack that related to Scott Jester. These articles included a notebook page containing personal financial information with Scott Jester's name, birthday, mother's maiden name, and Social Security number, along with several of Jester's credit card, debit card, and bank account numbers. Scott Jester testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count VI was for articles recovered from the backpack that related to Ronald Chrum. These articles included Chrum's driver's license, birth certificate, and certification of road test. There was also an e-mail address written on a piece of notebook paper that read "Chrum1971@hotmail." 3 VRP at 258. Chrum testified that he was born in 1971 but that he had

not created that e-mail address. Chrum further testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count VII was for articles recovered from the backpack that related to Keith Jester. Keith Jester is Scott Jester's son. These articles included a piece of notebook paper containing Keith Jester's account numbers, log-in names, routing numbers, birthdate, physical address, e-mail addresses, tax ID number, driver's license number, phone number, social security number, and partial debit card number. Keith Jester testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count VIII was for a W-2 form belonging to David Estes that was recovered from the backpack. Estes's W-2 form contained Estes's Social Security number, physical address, and wages. Estes testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count IX was for a W-2 form belonging to Brandon Cohen that was recovered from the backpack. Cohen's W-2 listed Cohen's Social Security number, wages, and other personal and financial information. Cohen testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count X was for a W-2 form belonging to Christopher Lennox that was recovered from the backpack. Lennox's W-2 listed Lennox's Social Security number, wages, physical address, and other personal and financial information. Lennox testified that he had never met Polley and had never given Polley permission to possess his personal information.

Count XI was for Polley driving with a suspended license when he was pulled over on March 27. Polley does not contest this charge, nor his subsequent conviction for it, in this appeal.

Count XII was for articles recovered from the backpack that related to Brittnay Rader. These articles included a checkbook with several blank checks purporting to be from Rader's bank account, and checks from the same account payable to Polley. Polley endorsed the back of one of the checks made payable to him. The checks had Rader's name at the top, but had a different address, a different phone number, and a signature that was not Rader's. Rader testified that she had never ordered these checks, did not know Polley, had never given Polley permission to possess her personal information, and had never given Polley permission to create a checking account or write a check in her name.

C.    PROCEEDINGS

Before trial, Polley sought permission to introduce other suspect evidence. Specifically, Polley sought to introduce evidence relating to a person named Daniel Espinoza and another person named Rachel Thorsness. The trial court ruled against the other suspect evidence being proffered, stating, "There isn't the appropriate tendency to show that another person committed the crime." 1 VRP at 16. Based on the trial court's ruling, the State moved to excluded references to Espinoza and Thorsness. The trial court granted the State's motion excluding specific references to Espinoza and Thorsness.

Polley also objected to the admission of the text messages exchanged between Silvernail and the number Thomas provided to her as Polley's phone number. Polley argued that the State could not establish a foundation for Polley being the person responding to Silvernail in the text messages. The trial court admitted the text messages, stating that the defense was still entitled to

argue to the jury that someone other than Polley was the person responding to Silvernail's text messages.

At trial, Polley testified in his own defense. Polley testified that his father did not have his phone number, but he also recited a phone number to the court that he had given his father. Polley said that he did not receive a phone call or text messages from Silvernail at that phone number on March 18, 2015, and that he was not the person who responded to the text messages Silvernail had sent.

Additionally, Polley testified that the officer told him that he was under arrest for driving with a suspended license. Polley testified that he asked the arresting officer "if he was really taking me to jail for driving [with a suspended license] and he said, yeah. Then he said, and for something left at somebody's house." 5 VRP at 445. Polley said that when he asked the officer what it was, the officer responded, "A backpack." 5 VRP at 445 (internal quotations omitted).

Polley was convicted on counts I through XII as charged. After the verdict was read, Matthew Brooks, a friend of Polley's told defense counsel that he had seen juror 11 leaving a casino that morning intoxicated. Defense counsel made a record of Brooks's allegations regarding juror 11 and no further action was taken. Polley appeals.

ANALYSIS

A.    EVIDENTIARY RULINGS

Polley argues that the trial court abused its discretion in admitting the text messages and excluding other suspect evidence. We disagree.

7

1.      Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Franklin*, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014); *State v. Young*, 192 Wn. App. 850, 854, 369 P.3d 205, *review denied*, 185 Wn.2d 1042 (2016).  An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or is based on untenable grounds. *Young*, 192 Wn. App. at 854.

2.      Text Messages

Polley argues the superior court abused its discretion in admitting the text messages because the State failed to lay a proper foundation.  Specifically, Polley argues that the State did not provide sufficient evidence to support its assertion that Polley was the person who sent the text messages to Silvernail and that Polley would likely not have been convicted but-for the admission of the text messages.  We hold the trial court did not abuse its discretion.

Polley's lack of foundation argument is grounded in ER 901, which requires authentication as a precondition for admissibility.  "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a).  When considering verbal electronic transmissions, the "contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims." ER 901(b)(10).  The methods for authenticating e-mails apply to text messages. *See Young*, 192 Wn. App. at 856 (citing *In re Det. of H.N.*, 188 Wn. App. 744, 759, 355 P.3d 294 (2015), *review denied*, 185 Wn.2d 1005 (2016)).

The party moving for admission of the evidence need only make a prima facie showing of authenticity for purposes of establishing admissibility under ER 901. A prima facie showing is made "'if the proponent shows enough proof for a reasonable fact finder to find in favor of authenticity.'" *In re H.N.*, 188 Wn. App. at 751 (quoting *State v. Payne*, 117 Wn. App. 99, 108, 69 P.3d 889 (2003), *review denied*, 150 Wn.2d 1028 (2004)). Challenges to authenticity go to weight of the evidence, not its admissibility. *Young*, 192 Wn. App. at 857.

In *Young*, this court held that the recipient's personal knowledge of the sender's phone number and the contents of the texts were sufficient evidence to permit a reasonable trier of fact to find that the defendant was the sender of the text messages. 192 Wn. App. at 857. The recipient of the text messages in *Young* had personal knowledge of the defendant's phone number because it was listed as a contact in the phone, and the content of the text messages corroborated the recipient's testimony describing the defendant's conduct. *Id.*

Here, the State made a prima facie showing of authenticity for the text messages. Silvernail testified that Thomas provided that number as Polley's phone number, establishing the personal belief that the phone number belonged to Polley. The contents, substance, and distinctive characteristics of the text message exchange further establish the prima facie showing. Silvernail responded to, "Who's this," with, "Your aunt" and a detailed explanation of the backpack and its contents, her presumption that the backpack and its contents belonged to Polley, and an order for Polley to come get the backpack and its contents or she would call law enforcement. 3 VRP at 145. The response of, "Yep i will n their [sic] is no way u could have found it it was put away n if i had a ride i would have already been there to get the back pack [sic]," shows confirmation of Silvernail's presumption and acquiescence to Silvernail's order. CP at 50; *see* 3 VRP at 147.

Polley's testimony that he did not respond to Silvernail's text messages and that his father did not have his phone number go to the weight of the evidence, not its admissibility. *Young*, 192 Wn. App. at 857. Therefore, we hold that the trial court did not err in admitting the text messages.

3.      Other Suspect Evidence

Polley argues that the trial court erred in denying his motion to introduce other suspect evidence. We hold that the trial court did not err in excluding Polley's other suspect evidence.

Both the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee the criminal defendant's right to present a defense. *State v. Starbuck*, 189 Wn. App. 740, 750, 355 P.3d 1167 (2015), *review denied*, 185 Wn.2d 1008 (2016). Alleging that a ruling violated the defendant's right to a fair trial does not change the standard of review from abuse of discretion, but an erroneous evidentiary ruling that violates the defendant's constitutional rights is presumed prejudicial unless the State can show the error was harmless beyond a reasonable doubt. *Franklin*, 180 Wn.2d at 377 n.2; *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). A criminal defendant does not have a constitutional right to present irrelevant or inadmissible evidence. *Starbuck*, 189 Wn. App. at 750.

The standard for the relevance of other suspect evidence is whether it tends to connect someone other than the defendant with the crime. *Franklin*, 180 Wn.2d at 381; *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932). Before the trial court admits "other suspect" evidence, the defendant must present a combination of facts or circumstances pointing to a nonspeculative link between the other suspect and the crime. *Franklin*, 180 Wn.2d at 381. The defendant bears the burden of establishing the relevance and materiality of other suspect evidence. *Starbuck*, 189 Wn. App. at 752. A showing that it was possible for the third party to commit the crime is insufficient.

*State v. Rehak*, 67 Wn. App. 157, 163, 834 P.2d 651 (1992), *review denied*, 120 Wn.2d 1022, and *cert. denied*, 508 U.S. 953 (1993). Importantly, the inquiry focuses on whether the evidence tends to create a reasonable doubt as to the defendant's guilt, and not on whether it establishes the third party's guilt beyond a reasonable doubt. *Franklin*, 180 Wn.2d at 381.

Here, Polley contends that the "other suspect" evidence would have provided that: (1) "Tina James received Mr. Polley's mail for three years but that ended and she gave all his mail and documents to a third party she believed was taking those items to Ms. Silvernail's house"; (2) "Silvernail called 911 to report that [Espinoza] dropped off the backpack at her house"; and (3) "Thorsness and Mr. Espinoza were also charged with possessing . . . Brittany Rader's, identification information." Br. of Appellant at 21. Polley's argument that the trial court erred in excluding the other suspect evidence fails because none of the evidence that Polley argues should have been admitted creates a reasonable doubt as to Polley's guilt.

At best, the evidence that Polley argues should have been admitted supports a theory that Espinoza and Thorsness may *also* be guilty, but does not create reasonable doubt as to Polley's guilt. *Franklin* holds that "other suspect" evidence is relevant where it "'tend[s] to connect' *someone other than the defendant* with the crime," 180 Wn.2d at 381 (quoting *Downs*, 168 Wash. at 677) (emphasis added), but that, when considering the admission of "other suspect" evidence, the proper focus is "'whether the evidence offered tends to create a reasonable doubt as to the *defendant's* guilt.'" 180 Wn.2d at 381 (quoting *Smithart v. State*, 988 P.2d 583, 588 & n.21 (Alaska 1999)). Therefore, we hold that the trial court did not err in excluding Polley's other suspect evidence.

B.      SUFFICIENCY OF THE EVIDENCE

Polley argues that the State did not present sufficient evidence to convict him of identity theft or fraud. We disagree.

1.      Standard of Review

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence. *Id.* All reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.*

2.      Identity Theft—Counts I, III-X, and XII

Polley first argues that the State did not present sufficient evidence to convict him of identity theft because the State did not present sufficient evidence to prove that (1) he possessed the victim's personal and financial information, and did so (2) with intent to commit a crime. In support, Polley argues that the State did not prove that the backpack belonged to him, nor that he ever possessed the backpack. We hold that State presented sufficient evidence to establish that Polley possessed the victim's personal and financial information with intent to commit a crime, especially as the truth of the State's evidence is admitted and all reasonable inferences are drawn in the State's favor.

RCW 9.35.020 proscribes identity theft. The statute states in relevant part:

> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
>
> . . . .
>
> (3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree. Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

RCW 9.35.020.

Here, the testimony presented by Silvernail, law enforcement, and the victims was sufficient to convict Polley on all counts of second degree identity theft. Where the truth of the State's evidence is admitted and the reasonable inferences are drawn in the State's favor, the evidence presented in Silvernail's testimony established that: (1) Silvernail found a backpack containing the victims' personal and financial information in her garage; (2) Silvernail assumed the backpack belonged to Polley, based on the several pieces of mail addressed to, and checks made out to, Polley in the backpack; and (3) Silvernail's suspicions were confirmed when Polley responded to Silvernail's text message acknowledging that the backpack was his, disputing how Silvernail could have found the backpack, and his intent to come retrieve the backpack. The testimony of the officer who arrested Polley is further evidence that the backpack belonged to Polley because it was Polley who identified the backpack at his aunt's house when being told he was under arrest "for items that he left at a relative's home." 4 VRP at 360. This evidence is sufficient for rational trier of fact to find that Polley possessed the victims' personal and financial information beyond a reasonable doubt.

The testimony of Deputy Moss and the victims, where truth of the evidence is admitted and the reasonable inferences therefrom are drawn in favor of the State, is sufficient for a rational trier of fact to find that Polley intended to use the victims' personal and financial information to commit a crime. Deputy Moss testified that the articles relating to each of the victims' personal and financial information were recovered from Polley's backpack. Each victim who was still alive testified that Polley was not given permission to use or possess the articles containing their personal and financial information. One victim did not testify, but the State presented evidence that the victim had passed away over three years before the checks purporting to be from him were dated. The reasonable inference that may be drawn from the numerous articles of personal and financial documents belonging to at least 12 people other than Polley,[2] where Polley did not have permission to be in possession of the articles belonging to at least the 10 victims, is that Polley was possessing the victims' personal and financial information with the intent to commit a crime.

Therefore, we hold that the State provided sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Polley possessed the victims' personal and financial information with intent to commit a crime beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. And, accordingly, we hold that Polley's challenges to the sufficiency of the evidence for his convictions for second degree identity theft fail.

---

[2] The 12 people are the 10 named victims plus "Steve McClendon" and "Michael Lawrence."

3.      Forgery—Count II

Polley argues that the State did not present sufficient evidence to convict him of forgery because it did not present sufficient evidence to prove that he "possessed or altered the fraudulent checks." Br. of Appellant at 13.  We hold that Polley's challenge to the sufficiency of the evidence for his conviction for forgery fails.

RCW 9A.60.020 provides in relevant part:

> (1) A person is guilty of forgery if, with intent to injure or defraud:
>
> (a) He . . . falsely makes, completes, or alters a written instrument or;
>
> (b) He . . . possesses, utters, offers, disposes of, or puts off as true a written instrument which he . . . knows to be forged."

Polley's argument is that "[t]he evidence established that the checks were in the backpack in Ms. Silvernail's garage, but there was no handwriting analysis, DNA or fingerprint analysis to connect Mr. Polley to the backpack and checks." Br. of Appellant at 13.  However, for the same reasons explained in the preceding subsection, the State present sufficient evidence to establish Polley possessed the forged checks. *See* subsection 2, *supra* (reasoning that when the truth of the State's evidence is admitted and the reasonable inferences drawn in the State's favor, the State's evidence was sufficient to convince a rational fact finder that Polley possessed the backpack and its contents).  Therefore, we hold that the State provided sufficient evidence to convince a rational trier of fact that Polley possessed the forged checks beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201.  And, accordingly, we hold that Polley's challenge to the sufficiency of the evidence for his conviction for forgery fails.

C.    JUROR MISCONDUCT

Polley argues he was denied his right to a fair trial when the trial court did not inquire into juror 11's fitness. We disagree.

RCW 2.36.110 governs the removal of unfit jurors and provides in pertinent part:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

Similarly, CrR 6.5 provides, "If at any time before submission of the case to the jury a juror is found unable to perform the duties[,] the court shall order the juror discharged."

Polley's argument fails because while the statute and court rule place an "obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror," they do not create obligations regarding the investigation of alleged misconduct. *State v. Jorden*, 103 Wn. App. 221, 227, 228-29, 11 P.3d 866 (2000), *review denied*, 143 Wn.2d 1015 (2001). Rather, the investigation and resolution of misconduct allegations are discretionary with the trial court. *Turner v. Stime*, 153 Wn. App. 581, 587, 222 P.3d 1243 (2009) ("A trial court has significant discretion to determine what investigation is necessary on a claim of juror misconduct."). Thus, we hold that the trial court did not abuse its discretion here because the trial court and both attorneys had the opportunity to view juror 11 throughout the day's proceedings, and neither attorney nor the trial court determined further inquiry was warranted after the allegation was made. Therefore, because the trial court did not abuse its discretion for failing to inquire into the alleged misconduct, Polley's argument that he was denied a fair trial for the trial court's failure to inquire further fails.

D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Polley argues he received ineffective assistance of counsel when his defense attorney did not "move for a mistrial or move to voir dire" when the potential juror misconduct was alleged. Br. of Appellant at 28. We hold that Polley fails to establish he was prejudiced by his attorney's failure to make either motion, and therefore, Polley's argument fails.

The right to effective assistance of counsel is afforded to criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To establish ineffective assistance of counsel, Polley must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Polley fails to establish either deficient performance or resulting prejudice, the court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). To establish prejudice, Polley must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335.

We hold that Polley's arguments that he received ineffective assistance of counsel fail because Polley fails to argue, or even allege, prejudice. *Hendrickson*, 129 Wn.2d at 78 (holding that failure to establish either deficient performance of prejudice is fatal to an ineffective assistance of counsel claim). Even if Polley had alleged prejudice, his claim would fail because he fails to show that either motion would have been granted had his attorney made either motion. Therefore, we hold that Polley's claim of ineffective assistance of counsel for his attorney's failure to move for a mistrial or to voir dire juror 11 fails.

In conclusion, we hold that the trial court did not abuse its discretion in making the challenged evidentiary rulings or in failing to inquire into the alleged juror misconduct; the evidence presented was sufficient to convict Polley on all of the identity theft and forgery counts; and Polley's ineffective counsel claim fails. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, A.C.J.

Melnick, J.