IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>VINCENT L. FOWLER,<br><br>Petitioner. | No.  51029-4-II<br><br>UNPUBLISHED OPINION<br>AFTER REMAND<br>FROM THE SUPREME COURT |

WORSWICK, J. — Fowler was convicted of two counts of first degree child molestation and first degree rape of a child.  In this personal restraint petition (PRP), Vincent Fowler argues that he received ineffective assistance of counsel when counsel failed to investigate witnesses, failed to prepare him for trial, and failed to present evidence that the victims had been abused by their brother.  We hold that Fowler has not shown that he is entitled to relief, and we deny his petition.

FACTS

Fowler met A.G. and A.C.G.'s homeless mother, Zeny Cardwell, through a friend.  A.G. was either 9 or 10 when she met Fowler, and A.C.G. was 8 or 9.  Fowler occasionally watched over the girls and gave them food, rides, and a place to stay.

One night in 2011, A.G. stayed at Fowler's apartment.  According to A.G., Fowler's roommate, Monica Boyle, was not present for most of the night.  A.G. said she played with a dog before falling asleep on the couch in the living room.  She fell asleep wearing a shirt and jeans and had shorts and underwear underneath her jeans.  Fowler slept on the floor.  A.G. woke up

when she felt something unzip her pants. A.G. felt Fowler touching her vagina on top of her clothes. A.G. turned over, got up, and went to the bathroom. There, she noticed her zipper was undone. When she returned to the living room, Fowler was pretending to be asleep on the floor. A.G. sat awake for the rest of the night.

The next day, A.G. told her friend about what happened. She also told Cardwell who did not believe her. A.G. said Fowler apologized to her and said he was drunk. Fowler told her that if he had done it, he would not do it again. A.G. continued to spend time with Fowler after this incident, but she felt safe because they were not alone.

A.C.G. experienced two similar incidents with Fowler. The first occurrence happened while A.C.G. and her family were at a friend's house. A.C.G. fell asleep on one couch in the living room while Fowler fell asleep on another couch. She woke up when he touched her. Fowler had pulled her pants and underwear down to her knees and was touching the inside of her vagina with his hands. He stopped touching her when Cardwell, who was sleeping in the bedroom, got up to use the bathroom and the lights turned on. When Cardwell came out of the bathroom, A.C.G. told Cardwell that she wanted to sleep with her.

The second incident occurred in the same house, two days after the couch incident. A.C.G. was asleep on the bed in the bedroom; A.G. and Nestor, her older brother, were also sleeping on the bed. A.C.G. wore a skirt and underwear. Fowler came into the bedroom and touched A.C.G.'s vagina under her skirt but on top of her underwear. He stopped touching her when Nestor moved.

During this time frame, Nestor was also sexually abusing A.G. and A.C.G. When the girls told their mother about Nestor's abuse, Cardwell kicked Nestor out of the home and called

2

law enforcement. Nestor subsequently pleaded guilty to one count of child molestation. When law enforcement was investigating Nestor's crimes, they learned that Fowler had also sexually abused A.G. and A.C.G.

Detective Kenny Davis interviewed Fowler, who denied the allegations of sexual abuse, but admitted he knew the girls, had spent time with them, and was around them during the relevant time frame. He also admitted that A.G. had spent the night with him, and that she slept on the couch while he slept on the floor. During his interview with Detective Davis, Fowler stated that he lived with Boyle. Fowler did not say that Boyle was home when A.G. spent the night or mention that Boyle had a dog.

Fowler was charged with two counts of first degree child molestation and one count of first degree rape of a child for acts occurring between April 1, 2011 and December 1, 2011. Fowler pleaded not guilty, and the matter proceeded to a jury trial in September 2013.

During pretrial motions, defense counsel told the court that he did not have any witnesses other than the potential for Fowler to testify. Fowler then told the court that he disagreed with his counsel's strategy. Specifically, Fowler said that he had alibi witnesses who could also prove where he was living at the time, but that his counsel would not call his witnesses. He told the court that the witnesses were "Kineshia Lewis, Lindsay Warren and [his] brother, Earl Fowler."[1] Verbatim Report of Proceedings (VRP) (Sept. 30, 2013) at 13.

---

[1] In his supplemental petition, Fowler states that the record misstates two names, and that the correct names are Lyndsey Warner and Darryl Fowler.

Defense counsel told the court that he had spoken to "the witnesses [Fowler]'s indicated" and had received reports from his investigator on the witnesses. VRP (Sept. 30, 2013) at 14. Trial counsel said:

> It's safe to say that they know who Mr. Fowler is, and they did have contact with him during some period in that basically nine—month period. But no one is saying that he didn't have—that he did not have contact with the alleged victims, during that time, or that he would not have had the opportunity to have had contact. In my way of thinking, knowing what [sic] alibi witness is, I don't perceive them as being able to testify that Mr. Fowler would have been unable to commit these offenses.

VRP (Sept. 30, 2013) at 14. Trial counsel also said that he "perceive[d] this [case] as a general denial," and that Fowler has made statements that "he was at the same locations as these girls at the times that these incidents allegedly occurred. So [he] [did]n't perceive this as an alibi defense." VRP (Sept. 30, 2013) at 14-15. The trial court acknowledged the disagreement over strategy.

During motions in limine, the parties agreed to exclude evidence of the victims' prior sexual history. The parties also agreed to exclude evidence of Nestor's abuse of the victims and those related proceedings. Defense counsel said that he believed the rape shield laws would prevent admission of the evidence, and "frankly, [he was] not sure if it is more helpful or harmful to Mr. Fowler." VRP (Sept. 30, 2013) at 22.

At trial, A.G. and A.C.G. testified consistently with the above. The property manager of Boyle's apartment complex, Natalie McMahon, testified that Fowler had lived at the apartment complex as an "unauthorized occupant" in 2011. VRP (Oct. 3, 2013) at 182.

Fowler testified, and again denied the allegations. Regarding the incident with A.G., Fowler testified that Ms. Boyle and her dog were at the apartment. He fell asleep on the floor

4

while Boyle and A.G. sat on the couch watching a movie. In the middle of the night, the dog

woke him up by licking his face. He pushed the dog off him, but the dog jumped onto A.G. and

licked her, which caused her to awaken. He took the dog off A.G. and called to Boyle, who

came out of the kitchen to get the dog. He briefly talked with Boyle before going back to sleep

on the floor. A.G. was already asleep on the couch and was still asleep when he left the next

morning.

Because of Fowler's testimony, the State requested a missing witness jury instruction.

Defense counsel told the court that Fowler had not "had any contact with [Boyle] in more than

two years" and counsel did not "know where she [was] and [was] unable to locate her." VRP

(Oct. 7, 2013) at 238. Counsel also told the court that "Mr. Fowler has indicated that he doesn't

know where she is, so [counsel was] not sure where we would have sought to seek her." VRP

(Oct. 7, 2013) at 242. The court gave the instruction over Fowler's objection. Fowler asked the

court to allow him to recall McMahon to testify that Boyle had moved out in June 2011. The

court agreed, finding that Fowler could argue a reasonable inference from the fact that Boyle had

been gone for two years.

Fowler then recalled McMahon to testify that Boyle had moved out in June 2011.

McMahon testified that Boyle lived at the apartment complex in 2011, and that Fowler had lived

with Boyle and was an "unauthorized occupant." VRP (Oct. 7, 2013) at 253. McMahon testified

that Boyle moved out of the apartments in July 2011. On cross-examination, McMahon testified

that she had "confronted" Fowler because she received "complaints that he was hanging around

the children at the playground—." VRP (Oct. 7, 2013) at 255. Trial counsel objected, and the

trial court sustained the objection, instructing the jury to disregard McMahon's statement about

the complaints. McMahon testified that Boyle provided a forwarding address. She testified that she had not been contacted by defense counsel or an investigator and did not believe that she had been asked about Boyle's forwarding address. McMahon testified that she thought Boyle lived in Port Orchard and that she had seen her at a store in the last couple of months.

Fowler was convicted of two counts of first degree child molestation and one count of first degree rape of a child. The court imposed discretionary legal financial obligations. Fowler appealed.

On direct appeal, Fowler argued that the missing witness instruction was a judicial comment on the evidence, and that the trial court erred by issuing the missing witness instruction. On August 18, 2015, Division Three of this court held that the trial court did not err in issuing the instruction, and even if it did, the error was harmless.

On September 2, 2015, Darryl Fowler retained John Crowley to represent Fowler in post-conviction matters. On September 15, appellate counsel, Backlund & Mistry, filed a petition for review with the Supreme Court. On March 31, 2016, the Supreme Court issued its decision, which provided

> [t]hat the Petition for Review is granted only on the issue of imposition of discretionary legal financial obligations and the case is remanded to the Superior Court to reconsider the imposition of the discretionary legal financial obligations consistent with the requirements of *State of Washington v. Nicholas Peter Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

Order, *State v. Fowler*, No. 92244-6, ¶ 3 (Wash. Mar. 31, 2016).

On May 2, the Supreme Court issued its mandate, providing:

> The Order of the Supreme Court of the State of Washington issued on March 31, 2016, which granted review only on the issue of imposition of discretionary legal financial obligations and remanded the case to the trial court to reconsider the

imposition of the discretionary legal financial obligations consistent with the requirements of *State of Washington v. Nicholas Peter Blazina*, 182 Wn.2d 827, [344 P.3d 680] (2015), is now final. This cause is mandated to the superior court from which the appellate review was taken for further proceedings in accordance with the attached true copy of the Order.

Mandate, *State v. Fowler,* No. 92244-6-II, at 1 (Wash. May 2, 2016).

On October 19, the superior court entered an order amending the judgment and sentence, which amended the imposition of LFOs, and stated that "all other conditions of the Judgment and Sentence remain in effect." Order Amending J&S, *State v.* Fowler, No. 13-1-00466-4, at 1 (Kitsap County Super. Ct., Wash. Oct. 19, 2016).

On May 22, 2017, the Washington State Bar Association filed a complaint against Fowler's former counsel, John Crowley, for numerous violations of the Rules of Professional Conduct. On September 18, 2017, Crowley resigned in lieu of discipline. On October 9, Fowler retained current counsel. On October 18, current counsel filed a "placeholder" petition. On March 26, 2018, current counsel filed a supplemental petition.

We dismissed Fowler's petition as untimely, holding that equitable tolling did not apply. *In re Pers. Restraint of Fowler*, 9 Wn. App. 2d 158, 167-68, 442 P.3d 647 (2019). Our Supreme Court reversed, adopted the federal standard for equitable tolling, held that under this equitable tolling rule Fowler's petition was timely, and remanded to this court for consideration on the merits. *In re Pers. Restraint of Fowler*, 196 Wn.2d 1036, 479 P.3d 1164, 1170 (2021). We now review Fowler's remanded petition.

ANALYSIS

I. PRP PRINCIPLES

A PRP is not a substitute for a direct appeal and the availability of collateral relief is limited. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 10, 84 P.3d 859 (2004). To be entitled to relief, the petitioner must show either a constitutional error that resulted in actual and substantial prejudice, or a nonconstitutional error that constituted a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005), *abrogated by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 549 U.S. 70, 166 L. Ed. 2d 481 (2006). The petitioner must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

It is the petitioner's burden to establish this "threshold requirement." *Woods*, 154 Wn.2d at 409, *abrogated by Carey*, 549 U.S. 70. To do so, a petition must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). The petitioner must identify facts and admissible evidence that would entitle him or her to relief, and may not rely solely on conclusory allegations, speculation, or inadmissible hearsay. RAP 16.7(a)(2); *Rice*, 118 Wn.2d at 886; *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010).

In evaluating PRPs, we may dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error, remand for a hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record, or grant the PRP without further hearing if the petitioner has proven actual prejudice

or a miscarriage of justice. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Rice*, 118 Wn.2d at 886-87. And, if there are material disputed issues of fact, then the trial court will be directed to hold a reference hearing to resolve the factual questions. *Rice*, 118 Wn.2d at 886-87.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Fowler argues that trial counsel was ineffective for failing to (1) interview crucial witnesses, (2) prepare Fowler for his testimony, and (3) offer evidence that the victims had been abused by Nestor.[2] We disagree.

A. *Legal Principles*

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). A petitioner claiming ineffective assistance of counsel necessarily establishes actual and substantial prejudice if the standard of prejudice applicable on direct appeal is met. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Ineffective assistance of counsel is a two-prong inquiry. *Grier*, 171

---

[2] In his issue statement, Fowler also asserts that trial counsel failed to advise him of the full sentencing ramifications. Fowler does not otherwise offer argument related to the consequences of sentencing.

Wn.2d at 32. To show that he received ineffective assistance of counsel, a petitioner must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *Grier*, 171 Wn.2d at 32-33.

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy and tactics cannot form the basis of a finding of deficient performance. *Grier*, 171 Wn.2d at 33. Prejudice can be shown only if there is a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. There is a strong presumption that defense counsel's conduct was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336.

B.      *Failure To Interview Witnesses*

Fowler argues that trial counsel was ineffective for failing to call Monica Boyle and Lyndsey Warner. Specifically, he argues that both Boyle and Warner would have offered exculpatory testimony, and bolstered his credibility.

To be effective, trial counsel must investigate the case. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). This duty to investigate includes interviewing witnesses. *Jones*, 183 Wn.2d at 339. Although trial counsel is not required to interview every possible witness, counsel's failure to interview witnesses who may provide corroborating testimony can constitute deficient performance. *State v. Weber*, 137 Wn. App. 852, 858, 155 P.3d 947 (2007). Counsel's duty includes making reasonable investigations or making a reasonable decision rendering

10

particular investigations unnecessary. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 355, 325 P.3d 142 (2014).

The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics, but this presumption may be overcome by showing, among other things, that the witness was not presented because counsel failed to conduct appropriate investigations. *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987). A defendant raising a "failure to investigate" claim must show "a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In Re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004).

1. *Lyndsey Warner*

Fowler argues that trial counsel was ineffective for failing to interview Warner. He claims that trial counsel lied to the court about contacting Warner, and that Warner could have provided exculpatory testimony. Fowler does not identify admissible relevant evidence Warner could have offered.

We need not make a determination whether trial counsel lied to the trial court; we hold that Fowler fails to demonstrate that counsel was ineffective for failing to investigate Warner.

a. *Counsel's Alleged Failure To Interview Warner*

Trial counsel told the trial court that he had spoken with Warner, and that his investigator prepared a report on Warner. Trial counsel said that he had determined that Warner was not a useful alibi witness because she did not report that Fowler did not have contact with the victims or could not have had contact with the victims.

11

In his petition, Fowler claims that counsel lied to the court and that he did not contact Warner. Warner provided a declaration in support of Fowler's petition, stating that no member of Fowler's defense team contacted her. She also said that she was in an automobile accident in 2016, which affected her ability to recall specific details.

In response to Fowler's petition, trial counsel provided a declaration, stating that his investigator spoke with Warner and wrote a report. Counsel's declaration says that Warner reported that Fowler had not harmed her children.

Although Fowler has presented a factual dispute about whether his trial counsel investigated Warner as a possible witness, this factual dispute, even if resolved in his favor, would not entitle him to relief. This is because Fowler fails to present competent admissible evidence demonstrating that he was prejudiced by trial counsel not investigating and calling Warner as a witness.

b. *Three-Foot Rule*

Warner's declaration states that Fowler often referred to "his 'three-foot rule,' which meant that if a child was within three feet, that was too close for his comfort." Pet., Ex. E at 2. According to Warner, Fowler referred to her children, and "all other children," as "dirt divers," and "was very concerned about how children place their hands in all sorts of unsanitary conditions and then into bags of food, for example, and other ways that children spread germs." Pet., Ex. E at 1.

The State argues that Warner's statements regarding Fowler's three-foot rule is not relevant and does not constitute admissible character evidence. For the first time in his reply brief, Fowler argues that evidence of his three-foot rule is admissible under ER 404 and ER 406.

Additionally, Fowler speculates that if trial counsel had interviewed Warner, he would have learned more about Fowler's rule.

Under ER 404(a), a party generally cannot introduce character evidence to show that a person acted in conformity with that character. But a defendant may introduce evidence of a pertinent character trait. Under ER 404(a), a character trait is "pertinent" if it is relevant. *State v. Perez-Valdez*, 172 Wn.2d 808, 819-20, 265 P.3d 853 (2011). Unless certain exceptions apply, a defendant may prove his or her character traits only with evidence about the defendant's reputation for that character. ER 405.[3]

For the first time in his reply brief, Fowler suggests that his three-foot rule is indicative of his good character for sexual decency. But Warner's declaration makes no mention of Fowler's reputation in the community or that he has a reputation for sexual decency. And a reputation for sexual indecency is not an essential element of first degree child molestation or first degree rape of a child. Moreover, Fowler does not explain how Warner's testimony of his three-foot rule is admissible under ER 404 or ER 406. Because Warner's testimony regarding Fowler's three-foot rule would not have been admitted, we hold that even if counsel failed to interview Warner, Fowler does not demonstrate that counsel's performance was deficient or that he was prejudiced.

---

[3] ER 405 provides:

> (a) **Reputation.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross examination, inquiry is allowable into relevant specific instances of conduct.
> (b) **Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

c. *Rumor Regarding Cardwell*

Warner's declaration also states that she used to work with Cardwell and lived in the same apartment complex as Boyle where one incident occurred. The declaration then states:

> The rumor circulating around the complex was that [Cardwell] coached her children to blame [Fowler] in an attempt to deflect blame from her son, [Nestor], the girls' older brother who was convicted of sexually assaulting both girls over a period of years. I cannot specifically recall to whom [Cardwell] disclosed that she influenced her children to accuse [Fowler] as a means to divert attention from Nestor.

Pet. at Ex. E.

The State argues that Warner's statements regarding a rumor that the victims' mother "coached" the victims to blame Fowler "in an attempt to deflect blame from her son"[4] is inadmissible hearsay. Br. of Resp't at 28-29.

Hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted. ER 801(c). Hearsay does not constitute admissible evidence that is necessary to justify a reference hearing. *In re the Pers. Restraint of Moncada*, 197 Wn. App. 601, 608, 391 P.3d 493 (2017).

Warner's declaration relaying the apartment complex rumor is inadmissible hearsay because it is a statement, relaying another's statement, made outside of court and offered for its truth of the matter asserted; evidence that Fowler was unfairly blamed for the charged crimes. Fowler does not offer an exception to the hearsay rule under which Warner's statements could be considered admissible evidence. Rather, in his reply, he speculates that if counsel had investigated, he would have discovered the rumor and been prompted to engage in additional

---

[4] The victims' older brother was convicted of child molestation for sexually abusing both victims. The victims' mother reported the brother to law enforcement.

investigation. We hold that Fowler's assertion that Warner could have provided information that could have led to a possibly fruitful investigation is speculation and insufficient to demonstrate prejudice. *Rice*, 118 Wn.2d at 886. Because Warner's testimony regarding a rumor would not have been admitted, and because Fowler's argument that investigation of the rumor would have led to admissible evidence is speculative, we hold that Fowler does not demonstrate that counsel's performance was deficient or that he was prejudiced.

2. *Monica Boyle*

Fowler claims that counsel was ineffective for failing to interview Boyle because her testimony would have contradicted A.G.'s testimony and bolstered Fowler's credibility. He claims that even though Boyle's declaration contradicts his own testimony, if counsel had investigated and called Boyle, he "likely would not have taken the stand or altered the substance of his testimony." Suppl. Pet. at 30. Counsel's failure to investigate was prejudicial, he argues, because after he testified, the trial court issued a missing witness instruction based on his reference to Boyle. And if Boyle had testified and corroborated his narrative, the State would not have requested and received a missing witness instruction.

In support of these arguments, Fowler provides a declaration from Boyle. Boyle's declaration states that she allowed Fowler to sleep on her couch, and he was not allowed to be present when she was not home. Further, she did not allow him to have guests in her home, and she "clearly recall[s] that no young girls ever spent the night" and that she is "certain that no such thing ever occurred." Pet. at Ex. G.

Fowler relies on *Jones* to demonstrate that trial counsel's performance was deficient and prejudicial. *Jones* involved a "credibility contest" between the State's witnesses and the

15

defendant's witnesses. *Jones*, 183 Wn.2d at 344. *Jones* concluded that the defendant was prejudiced because defense counsel did not interview an eyewitness to an assault who (1) would have directly contradicted the alleged victim's version of events, (2) would have corroborated similar testimony of another witness, (3) would have provided "very defense-favorable testimony" that the defendant was in fact the victim, and (4) was a neutral observer with no relationship to either the defendant or the alleged victim. *Jones*, 183 Wn.2d at 341-42.

This case is distinguishable from *Jones*. First, although Boyle would have contradicted A.G.'s testimony about where the incident occurred,[5] she would not have been able to directly contradicted A.G.'s claim of abuse because A.G. testified that Fowler's roommate was not home when the incident occurred. Second, Fowler admitted to law enforcement and testified at trial that A.G. stayed overnight with Fowler at Boyle's apartment, and when that occurred, Fowler slept on the floor and A.G. slept on the couch. Third, although Boyle would have contradicted some of A.G.'s testimony, and it would have also contradicted Fowler's testimony that A.G. woke up because Boyle's dog jumped on her, not because he was unzipping her pants.

Our inquiry in determining whether trial counsel was deficient is not based on what we knew at the end of trial, but rather what was reasonable when counsel made the decisions. *Grier*, 171 Wn.2d at 34. Here, Fowler told the trial court that he had witnesses that he thought his trial counsel should call, but counsel did not call them. He identified those witnesses for the court— Lyndsey Warner, Kineshia Lewis, and Earl Fowler. Fowler later testified that Boyle was present when A.G. spent the night. During discussions of the missing witness instruction, trial counsel

---

[5] Fowler also asserts that Boyle "would have completely opposed A.G.'s allegations," but that is unsupported by either citation to the record or Boyle's declaration. Suppl. Pet. at 30.

told the court that he did not know where Boyle was, or how to reach her, and that "[Fowler] doesn't know—hasn't had any contact with her in more than two years" and "doesn't know where she is." VRP (Oct. 7, 2013) at 238, 242. Trial counsel's declaration states that Fowler told counsel that Boyle had moved out of the apartment complex and he did not know where she was.

Fowler now argues that counsel was ineffective for failing to investigate Boyle, because if he had, he would have called Boyle as a witness, and Boyle would have corroborated Fowler's narrative. And if she had testified and corroborated his narrative, then the court would not have given the missing witness instruction. But Boyle's declaration is wholly inconsistent with Fowler's testimony and Fowler's statements to law enforcement, which Detective Davis testified to.

Fowler also argues that if Boyle had testified, trial counsel would not have recalled McMahon, which would have avoided her embarrassing testimony. Fowler does not identify what part of McMahon's testimony resulted in prejudice, and this court can discern none.[6]

Further, Boyle's declaration does not assert that the incident never happened. Fowler's claim is that counsel was ineffective for not investigating and presenting a witness who would give Fowler an alibi for a time and place where Fowler admitted he was. But based on Fowler's statements to law enforcement and representation that he did not know of Boyle's whereabouts, it was not unreasonable for counsel not to pursue investigating Boyle's whereabouts. And Fowler has not shown that he was prejudiced by counsel's decision when Boyle's declaration

---

[6] It is possible that Fowler is referring to McMahon's testimony that she had received complaints about Fowler related to a playground, but trial counsel objected and the trial court instructed the jury to disregard her statement.

contradicts his statements to law enforcement and his own testimony. He essentially argues that he was prejudiced by the lost opportunity to offer perjury. We hold that his argument fails.

### 3. *Fowler's Testimony*

Fowler argues that trial counsel was ineffective for failing to prepare him to testify. Specifically, he argues that counsel's failure to investigate "ultimately forced [him] to begrudgingly testify without having reviewed the discovery—and after only 15 minutes of preparation." Suppl. Pet. at 30. In his declaration, Fowler asserts:

> During trial, after the state had rested and after [trial counsel] had returned from lunch, he told me that he was going to put me on the stand to testify. We had never before agreed that I was going to testify, I had no desire to testify, and I had never reviewed the discovery, including the police report of my statement. We talked for approximately 15 minutes, and when proceedings recommenced, he called me to the witness stand.

Decl. of Vincent L. Fowler in Support of Pet., Ex. D at 3.

Trial counsel provided a declaration and stated that he met with Fowler regularly and often during the course of his representation. He stated, "We did not know whether Fowler would need to testify but did prepare for that eventuality. His testimony was well conceived and consistent with his theory of the case," which was a general denial. Br. of Resp't at App. M.

Fowler relies on inapplicable cases that discussed that a criminal defendant's constitutional rights are violated when their attorney *prevents* the defendant from testifying. Fowler asserts these cases support his argument that a defendant's right to testify is violated when the attorney disregards the defendant's desire not to testify. We hold that the cases Fowler cites are not apt.

At most, Fowler presents a question of fact about the amount of time he was given to prepare to testify. But even if this court assumes that counsel deficiently failed to prepare Fowler, he does not provide competent evidence demonstrating that this resulted in prejudice.

4. *Failure To Seek Expert*

Fowler asserts that trial counsel had a duty to seek an expert to discover whether the victims may have fabricated the allegations against Fowler. Fowler fails to meet his burden to show that counsel's performance was deficient or that it resulted in prejudice. Fowler does not offer a declaration from an expert analyzing the testimony. His assertion is speculative and is loosely based on the rumor that the victims were coached to blame him as presented in Warner's declaration. Because this assertion is speculative, Fowler fails to show that counsel was deficient or that he was prejudiced. *See In re Pers. Restraint of Davis*, 188 Wn.2d 356, 379, 395 P.3d 998 (2017).

C.    *Evidence of Nestor's Prior Sexual Abuse of the Victims*

Fowler argues that trial counsel was ineffective for failing to present evidence of Nestor's history of sexually abusing the victims because (1) it was relevant and admissible as other suspect evidence for the acts charged in count III and (2) not barred by rape shield laws. We hold that counsel's failure to present evidence of Nestor's history was not ineffective.

1. *Other Suspect Evidence*

The standard for the relevance of other suspect evidence is whether it tends to connect someone other than the defendant with the crime. *State v. Franklin*, 180 Wn.2d 371, 381, 325 P.3d 159 (2014); *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932). Before the trial court admits "other suspect" evidence, the defendant must present a combination of facts or

19

circumstances pointing to a nonspeculative link between the other suspect and the crime. *Franklin*, 180 Wn.2d at 381. The defendant bears the burden of establishing the relevance and materiality of other suspect evidence. *State v. Starbuck*, 189 Wn. App. 740, 751, 355 P.3d 1167 (2015), *review denied*, 185 Wn.2d 1008 (2016). A showing that it was merely possible for the third party to commit the crime is insufficient. *State v. Rehak*, 67 Wn. App. 157, 163, 834 P.2d 651 (1992).

The defendant also bears the burden of showing that the other suspect evidence is admissible. *See State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986). A criminal defendant does not have a constitutional right to present irrelevant or inadmissible evidence. *Starbuck*, 189 Wn. App. at 750. The defendant must lay a foundation establishing a sufficient nexus between the other person and the crime. *State v. Condon*, 72 Wn. App. 638, 647, 865 P.2d 521 (1993).

Fowler contends that evidence that the victims were sexually abused by their brother would have undermined confidence in the verdict. But Fowler does not explain what evidence connects Nestor to the crimes alleged here.

Moreover, deficient performance cannot be based on legitimate trial strategy and tactics. *Grier*, 171 Wn.2d at 33. Here, trial counsel's decision was tactical. Trial counsel told the court that he believed it could do more harm than good, which is true. Admitting evidence that the victims were abused by another may have made the victims seem more vulnerable, and trial counsel's decision not to avoid the potentially prejudicial effect was a reasonable tactic.

2. *Rape Shield Laws*

Fowler argues that evidence of Nestor's history of sexually abusing the victims was not barred by rape shield laws. Specifically, he argues that trial counsel was deficient for failing to research the applicable law and for not knowing that it was not barred.

A defense attorney has a basic duty to know and apply relevant statutes. *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 101-02, 351 P.3d 138 (2015). Failing to conduct research falls below an object standard of reasonableness where the matter is at the heart of the case. *Yung-Chen Tsai*, 183 Wn.2d at 101-02.

Washington's rape shield statute excludes evidence of a sexual assault victim's past sexual behavior on the issue of consent and limits such evidence's use to prove the victim's consent. RCW 9A.44 .020(1), (3). The rape shield law should not be used to exclude evidence that an alleged child victim had previously been abused. *State v. Kilgore*, 107 Wn. App. 160, 177, 26 P.3d 308 (2001), *aff'd* 147 Wn.2d 288 (2002). This rule is based, in part, on the fact that children are incapable of consenting to a sex act, therefore, admission of prior sexual abuse is neither prejudicial to the victims nor does it tend to discourage prosecution. *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). Instead, courts should use "general evidentiary principles" and balance the probative value of the past sex abuse evidence against its possible prejudice. *Kilgore*, 107 Wn. App. at 177.

As discussed above, trial counsel made a tactical determination that the evidence presented risks that potentially outweighed the benefit. Fowler has not demonstrated that trial counsel's decision not to offer the evidence was not tactical. Moreover, Fowler cannot show prejudice. Even if the evidence was not barred by rape shield laws, it was inadmissible as other

suspect evidence, and Fowler has not identified another source of admissibility. Because he has not demonstrated that the outcome of the proceedings would have been different, he fails to establish that he received ineffective assistance of counsel. *Grier*, 171 Wn.2d at 34.

D.      *Cumulative Error*

Fowler argues that the cumulative effect of counsel's deficient performance deprived him of a fair trial. We disagree.

Cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless. *In re Detention of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012); *see In re the Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835 (1994). Fowler has not demonstrated multiple errors, and therefore his claim of cumulative error fails.

CONCLUSION

We hold that Fowler is not entitled to relief because his claim of ineffective assistance of counsel fails to meet the threshold requirements of showing error and resulting prejudice. Fowler has failed to provide competent evidence to show that his counsel was deficient or that any alleged deficiency prejudiced his case.

No. 51029-4-II

Accordingly, we deny his petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____, C.J.
Lee, C.J.

_____
Cruser, J.